**Mrs. Dorothy M. MADISON, Individually and on behalf of her minor child, Linda Faye Brown**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare.**

**Civ. A. No. 72–39.**

United States District Court, M. D. Louisiana.

Feb. 5, 1973.

---

Doris Falkenheiner, Legal Aid Society of *Baton Rouge, Baton Rouge, La.,* for plaintiff.

Douglas M. Gonzales, U. S. Atty., Baton Rouge, La., Joseph R. McMahon, Jr., Special Asst. U. S. Atty., New Orleans, La., for defendant.

E. GORDON WEST, District Judge:

This action is brought pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision of the Secretary of Health, Education and Welfare, which denied the plaintiff's application for children's insurance benefits. Plaintiff filed this suit individually and on behalf of her minor child, Linda Faye Brown.

The relevant facts are undisputed. The deceased wage earner, Richmond Brown, began living with the plaintiff in 1948 and they maintained that relationship until 1959. They never married. During this period of cohabitation six children were born and Linda Faye Brown was conceived. In 1959, when the plaintiff was three months pregnant with Linda, she had the wage earner committed to a mental hospital because of his violent nature and heavy drinking. Plaintiff and the wage earner never resumed living together after 1959. After approximately four months of hospitalization, the wage earner was released into the custody of his sister. The hospital would not release him to the custody of the plaintiff because of his history of aggressiveness toward her and the children. While the wage earner was thus living with his sister, Linda was born and lived with her mother. The wage earner lived with his sister until his death in 1969. After his death the plaintiff filed an application for surviving children's benefits on behalf of several of the children who were under eighteen years of age. Benefits were allowed to all who were applied for except Linda. This action is now before the Court to review the denial of benefits to Linda Faye Brown.

Surviving child's insurance benefits are governed by section 202(d)(1) and 202(d)(3), 42 U.S.C. § 402(d)(1) and (3) of the Social Security Act. To de-

termine whether an illegitimate individual qualifies as a "child" for the above actions, section 216(h)(3), 42 U.S.C. § 416(h)(3) must be applied. Section 416(h)(3) provides in part:

"(h) * * *

"(3) An applicant who is the son or daughter of a fully . . . insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

(C) in the case of a deceased individual

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to· be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured . . . died."

Benefits were allowed to three of the children based on written acknowledgments filed by the wage earner in 1965 in connection with applications for disability insurance benefits. On February 9, 1965 the wage earner filed an application for disability benefits and listed his children as "Donald Wayne, Terry Gail, Charles, and Richmond." On November 3, 1965 he filed a second application, this time listing his children as "Donald Wayne Brown, Terry Gail Brown, Edward Charles Brown, Ira Jean Brown, and Shorty Brown." When the present application for children's insurance benefits was filed the Secretary concluded that because Linda was not listed in either of the prior applications, the wage earner did not intend to acknowledge her as his child.

While it is true that Linda was left off of both prior lists, it would seem more logical to conclude that the omission was due to oversight rather than intention. From the way in which the wage earner listed his children differently on the two applications for disability benefits, it is obvious that he was somewhat confused as to the children and their names. Ira Jean (Ivory John) and Shorty Brown (Warren) were on the second application but not the first. Richmond was on the first but not the second. The wage earner listed Edward Charles on the second application, but never had a child by that name. (He and plaintiff had a son named Charles Ray; and the plaintiff had a son before she met wage earner named Edward.) The probability that the wage earner intentionally left off some children because he did not want to acknowledge them is extremely remote. It is more likely, in view of his mental condition, that he simply forgot the names and total number of children that he had. Linda had the misfortune of being forgotten both times. In light of the fact that he obviously had trouble remembering the children with whom he had lived prior to 1959, it does not seem unusual that he would forget a child who was not even born when he entered the mental hospital. Nevertheless, for whatever reason she was left out, Linda does not qualify as an acknowledged illegitimate as did the other children, and therefore if she is to recover under the Act it must be under § 416(h)(3)(C)(ii) as an illegitimate proved to be the child of the insured, and living with or supported by the insured at the time he died.

There seems to be little or no dispute that Linda meets the first part of the section's requirements, i. e., that she

was, in fact, the child of the deceased wage earner. At the hearing conducted by the examiner, he was asked by the plaintiff's attorney:

"Q. Mr. Ponder, is the issue today proof to paternity, or merely presume to fit the dependency requirement of the statute?

"Hearing Examiner: Actually, of course, I have to consider the proof of paternity on the evidence, as like it is, the claimant's testimony that she was pregnant by him, but, no documentary evidence is here, that she was his child, but the main question is what he contributed to the support under 216. It's a legal question, I think. I think because actually the facts are pretty—pretty much undisputed." (Page 35 of trial record)

Also a special determination report from the Kansas City payment center states:

" * * * While it can be shown by other satisfactory evidence (the birth certificate and the inference of her having been conceived during the common-law relationship of deceased wage earner and Dorothy Madison) she is the child of the deceased wage earner, there has to be evidence that he lived with the child or contributed to her support at the time he died April 22, 1969. This last requirement * * * cannot be met.

"DETERMINATION:

"This determination that Linda F. Brown cannot be deemed the child of Richmond Brown Jr. under the provisions of Section 216(h)(3) of the Social Security Act, and the application for benefits for her must be denied." Page 56 of transcript.

Also in the government's memorandum in support of their motion for summary judgment they state:

"The fact that Richmond Brown was living with the plaintiff at the time of Linda's conception would raise a presumption that the wage earner was indeed Linda's biological father. How-ever paternity alone is insufficient to establish entitlement. The child must in addition be living with or be supported by the alleged father at the time of his death." (Page 12 of government's memorandum.)

It thus quite clearly appears that Linda's application was denied solely because of the second requirement of section 216(h)(3)(C)(ii), i. e., because the hearing examiner concluded that there was no showing that the wage earner was "living with or contributing to the support of the applicant * * *" at the time of his death. It cannot be disputed that the wage earner never lived with or supported the plaintiff or her children after his commitment in 1959 until his death in 1969, and that thus the strict requirements of the Act are not met. However, consideration must be given to the spirit as well as to the letter of the legislation involved. In Schmiedigen v. Celebrezze, 245 F.Supp. 825 (D.D.C.1965) the court noted:

"The Social Security Act, especially its insurance provisions, was a far reaching, epoch-making, beneficent enactment. As a remedial statute, it should receive a liberal construction, rather than a narrow interpretation.

" * * *

"It is a well established principle of statutory construction that every legislative enactment must receive a sensible and reasonable construction that would effectuate its purposes. If a strict, literal interpretation would frustrate the objective of the legislative body and would lead to an absurd or futile result, it must be avoided. Necessary or obvious exceptions may be implied in statutory provisions in order to attain the desired end, on the theory that to do so would be carrying out the intention of the legislative body." At page 827.

The court then proceeded to conclude that an exception for mentally incompetent persons must be carved out of the requirement that a surviving spouse must have been "living with" the dece-

dent in order to be eligible for old age insurance death benefits. It was held that this requirement could not be applied where the applicant was in a mental hospital and was thus prevented from fulfilling the requirement.

In Wagner v. Finch, 413 F.2d 267 (CA 5–1969) an illegitimate child born after the death of her father was allowed to receive surviving child's insurance benefits despite the fact that the wage earner had never actually lived with or supported the child.

> " * * * in this instance where there is no case law which interprets the 'living with' provision of the statute, we agree that the illegitimate child of a deceased father, conceived before, but born after, the father's death, is sufficiently 'in being' to be capable of 'living with' the father at the time of his death. The fact that a worker dies before the birth of a child already 'in being' is no legal or equitable reason to prohibit that child from benefits." At page 268–269.

Thus the Fifth Circuit demonstrated another example where the language of the Social Security Act must be fitted to the circumstances of the particular case.

Several recent cases have allowed benefits in situations similar to that existing here. In Bridges v. Sec. of HEW, CCH Unemployment Ins. Rep. ¶ 16,480 (E.D.N.Y.1971), several illegitimate children were denied benefits by the Secretary because they did not meet the requirements of section 416(h)(3). The wage earner had lived with the plaintiff and the children until he was hospitalized for tuberculosis in 1961. He became disabled and ceased to make regular contributions to the children's support because of lack of funds. He was also forced to move to a different state for health reasons, but made regular visits back to see his "family." The paternity of the children was not in dispute. The Secretary denied benefits because the children were not living with the wage earner, and his contributions were nominal and sporadic. The court reversed the Secretary's holding stating:

> "A statute should be given a sensible and reasonable construction that will effectuate its purposes. A strict, literal interpretation frustrating its design should be avoided, so long as there is no violence to the text. * * *
>
> " * * *
>
> "Consonant with reasonable interpretation, wage earners are deemed to be living with and supporting their offspring when separation and lack of support are due to reasons beyond the wage earner's control." At page 2499–462.

The court then held that where paternity was not at issue and there is "a long history of living together and of support interrupted by failing health, neither statutory language nor good sense requires a denial of benefits." At page 2499–464.

Crisp v. Richardson, CCH Unemployment Ins. Rep. ¶ 16,612 (W.D.N.Carolina 1972) involved a situation where the wage earner father was placed in prison before the birth of his twin illegitimate children. The wage earner gave some support money from his prison earnings until he became unable to work because of illness. The Secretary denied benefits on the ground that the wage earner had not been living with or contributing to the support of the children at the time of his death. In reversing the Secretary's decision the court noted:

> "The reasonable and sensible interpretation of 'living with and contributing to' is that the test is met when separation and non-support are caused by reasons beyond the control of the wage earner. * * * The evidence unquestionably establishes that * * * the wage earner, was the father of Linda and Brinda, and that he was 'living with' them and 'contributing to [their] support,' within the limits of his abilities, at the time of his death." At page 2108.

388

■ The wage earner in the instant case was also in circumstances where the separation and non-support were beyond his control. Brown was committed to East Louisiana State Hospital, Jackson, Louisiana, in 1959 at the request of the plaintiff because of his violent nature and heavy drinking. He was released four months after his commitment. Dr. C. E. Major examined the patient and concluded that he could be released to the custody of his sister. His medical report and recommendation of January 13, 1959 stated:

"The examiner has talked at length with the wife and with the sister and it is my feeling at this time that we could possibly furlough this patient into the custody of his sister." (Page 74 of transcript.)

"The examiner is somewhat skeptical in furloughing this patient in view of the history of aggressiveness toward his wife and children. He has not, however, shown any overt determination to harm them. In view of the fact that the sister can give him excellent supervision it is felt that we can continue his furlough status." (Page 75 of transcript.)

So it is obvious that the wage earner did not intentionally elect to discontinue living with the plaintiff and the children, but was compelled to so under the hospital's recommendation. His separation is similar to that in Schmiedigen v. Celebrezze, supra, where a beneficiary in a mental hospital was excepted from the "living with" requirement of the Social Security Act.

It is also evident from the records that the wage earner was financially unable to support himself much less his children. The earning record shows that for the ten year period after his release from the hospital his total income was $1,397.92. There is also some indication that he occasionally gave his children money when they visited him, but it would be an insignificant amount in any event. He was unable to work, he was supported by his sister, and he had no income to speak of. Again circumstances beyond his control prevented him from rendering any support to Linda.

■ The circumstances surrounding this case create another exception that must be carved from the Act. Several of Linda's brothers are receiving benefits, but she is denied them because her father was unable to fulfill the "living with or contributing to the support" requirements of § 416(h)(3). The circumstances of this case and the purpose of the Social Security Act requires that this Court reverse the Secretary's decision. Normally a court's review of the Secretary's findings is limited to determining whether or not his findings are supported by substantial evidence, but there are exceptions to this limitation. In Ferran v. Flemming, 293 F.2d 568, 571 (CA 5–1961), the court stated:

"Our review is ordinarily, of course, limited to determining merely whether there is substantial evidence to support the administrative findings. But here, just as in the 'clearly erroneous' review of a judge's findings, when the fact-finder has failed to employ the proper legal standard in making its determination the finding may not stand."

The instant case does not involve a dispute as to material facts or credibility of witnesses. It involves instead the application and interpretation of a certain portion of the Act. For the reasons stated above this Court feels that the Secretary "failed to employ the proper legal standard" in his interpretation of § 416(h)(3).

Plaintiff also attacks the applicable sections of the Social Security Act on the constitutional grounds that they draw an arbitrary distinction between legitimate and illegitimate children, as well as requiring a different burden of proof for various classes of illegitimates. While recognizing that serious constitutional questions may be at issue, this Court declines to decide those issues in view of its decision on the merits. In so declining we follow the policy enunci-

ated by the Supreme Court in Crowell v. Bensen, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932):

"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."

For the reasons set forth herein, the decision of the Secretary is reversed and this matter is remanded with instructions to award insurance benefits to the plaintiff for the appropriate periods.