**Ms. Frances Jean KIMBRELL**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare.**

**Civ. A. No. 75–172.**

United States District Court, M. D. Louisiana.

March 31, 1977.

Doris Falkenheiner, Asst. Director, Legal Aid Society of Baton Rouge, Baton Rouge, La., for plaintiff.

Cheney C. Joseph, Jr., U. S. Atty., M. D. Louisiana, Robert S. Leake, Asst. U. S. Atty., M. D. Louisiana, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This action is brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for judicial review of a decision of the Secretary of Health, Education and Welfare denying plaintiff's application for surviving child's benefits as provided by Sections 202(d)(1) and 202(d)(3) of the Act, 42 U.S.C.A. §§ 402(d)(1) and 402(d)(3). This case being appropriate for decision by summary judgment, it has been submitted on the record, including a transcript of the hearing together with the briefs of counsel.

Plaintiff filed her application for benefits on May 23, 1973 alleging that she was the mother of Thomas Gene Kimbrell, the father being one Thomas Fletcher, an individual who, at the time of his death in January of 1973 was a fully insured individual under the terms of the Act, §§ 202(d) and 214(b). According to plaintiff, she and Mr. Fletcher had never lived together, nor had he ever contributed to the expenses of her pregnancy, he being unemployed and dependent upon his mother for support. Plaintiff bases her child's claim for insurance benefits on the fact that, even after she became pregnant, she and Mr. Fletcher continued to "date," that he bought her meals occasionally, and that they discussed marriage, contingent upon Mr. Fletcher's securing some realistic means of support for plaintiff and her child, as yet unborn. The fact of Fletcher's paternity is not disputed. Plaintiff's original claim was disallowed on July 2, 1973, whereupon a request for reconsideration was granted. The result was unfavorable to plaintiff. She then requested, and was granted, a *de novo* hearing before an Administrative Law Judge. This hearing resulted in a reversal of the earlier decision, which prompted a motion by the Appeals Council to review the findings of the ALJ. The hearing decision was reversed and the ruling of the Appeals Council became the final decision of the Secretary. This request for judicial review followed.

Plaintiff argues first that the ruling of the Appeals Council was not based upon substantial evidence and secondly, that the statutory scheme involved violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

The Administrative Law Judge found that plaintiff's son was not a "child" of the wage earner (Fletcher) as defined in Section 216(h)(3)(C)(ii) of the Act, which provides the standards for determining eligibility to receive the benefits here sought. That subsection states:

Sec. 216(h)(3):

"An applicant who is the son or daughter of a fully or currently insured individual,

but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

"(A) * * *

"(B) * * *

"(C) In the case of a deceased individual—

"(i) * * *

"(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

It is plaintiff's contention that Thomas Fletcher did live with and did contribute to the support of her child, to the extent possible, within the meaning of the statute. Both the Administrative Law Judge and the Appeals Council found that Fletcher was in fact the father of the child, but neither found that he was living with or contributing to the support of the child at the time of his death. It is acknowledged by plaintiff that Fletcher could not possibly have contributed directly to the child's support, since the birth occurred after Fletcher's death. Instead, plaintiff contends that indirect compliance with Section 216(h)(3)(C)(ii) has been established under the reasoning of *Wagner v. Finch*, 413 F.2d 267 (CA 5–1969), and related cases. These cases will be discussed later in this opinion.

In the present case, the applicant child was conceived sometime during May, 1972, the mother and father being 16 and 17 years of age, respectively. Both were living in the homes of their parents at the time. Mr. Fletcher, according to the evidence adduced at the hearing, frequently took Miss Kimbrell on dates to movies and to dinner, often having dinner with her at the home of his mother. In June, 1972, Mr. Fletcher was injured in a motorcycle accident, whereupon he was forced to give up his part-time job. At the time, he was making $1.65 per hour as a restaurant employee. Shortly thereafter, in July or Au-

gust of 1972, Miss Kimbrell discovered that she was pregnant. According to her testimony, Mr. Fletcher told her that they would marry if he could find another job. His efforts in that direction proved fruitless, and he did not work again before his death on January 21, 1973. The applicant, Thomas Gene Kimbrell, was born some twenty days later, on February 10, 1973. By a judgment of a state court, the child's surname was later changed to Fletcher. Mrs. Fletcher, the mother of the deceased wage earner, testified that since the birth she has attempted to aid in obtaining paternity payments for Miss Kimbrell.

The evidence shows that Mr. Fletcher did not contribute in any way to the expenses of Miss Kimbrell's pregnancy, and that the expenses of the delivery were undertaken by Miss Kimbrell's father and brother. Plaintiff contends that in view of his inability to work, coupled with his indigent circumstances, Thomas Fletcher's contributions to Miss Kimbrell constituted "subrogated support" to the child of a quality and amount sufficient to bring the plaintiff's child within the operation of the statute.

In reply, defendant questions the applicability of *Wagner v. Finch*, supra, and other cases cited by plaintiff, to the facts of this case, and urges that substantial evidence did exist for the final ruling of the Secretary.

We agree with the defendants. As pointed out by defendants, all of plaintiff's cited authority dealt with situations in which the wage earner had been contributing to the support of the child, or had been living with the child, but at some point was deprived, by forces beyond his control, of the ability to continue in that support or cohabitation. In *Wagner v. Finch*, supra, the deceased lived with and supported the mother and child on weekends, but because of distance and poverty was unable to have a normal "home life" with them. The Court there held that the substance, not the form, of the relationship must govern, and to the extent possible, claimant had been living with and supported by her father.

In *Madison v. Richardson*, 354 F.Supp. 383 (M.D.La.–1973), the wage earner was confined to a mental hospital, before which he had lived with claimant. The Court cited *Schmiedigen v. Celebrezze*, 245 F.Supp. 825 (D.D.C.–1965) as authority for its holding that the wage earner met the test of living with and contributing to the claimant. In *Schmiedigen*, an applicant for old age benefits was confined to a mental institution. The Court recognized this as an exception to the requirement that the applicant must be living with the decedent, holding that the requirement could not be applied in this situation. *Bridges v. Sec'y. of HEW*, CCH–U.I.R. ¶ 16,480 (E.D.N.Y.– 1971), presented a situation wherein the wage earner, who for years had lived with his children, was forced to move to another state after contracting tuberculosis. While there, he was confined to a hospital. The Court offered this solution: "Consonant with reasonable interpretation, wage earners are deemed to be living with and supporting their offspring when separation and lack of support are due to reasons beyond the wage earner's control."

These cases simply do not aid the plaintiff's position. The common thread woven through this entire line of jurisprudence consists of the fact that some sort of family structure pre-dated the forced separation. Plaintiff would have us inculcate such a concept into what appears to us to be no more than a "dating" relationship between Miss Kimbrell and Fletcher. This we cannot do. We find that the Secretary's decision as to this question was supported by substantial evidence.

Plaintiff next argues that the Act creates a legislative classification based on legitimacy, which is "suspect" and should therefore be sustained only by a showing, under strict judicial scrutiny, that said classification serves a compelling governmental interest. See, e. g., *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The argument is founded upon plaintiff's contention that the statutory scheme operates in such a way that certain illegitimate children are forced to suffer a

more onerous burden of proving their dependency than are other children, and if not made eligible for benefits by some section of the Act other than § 216(h)(3)(C)(ii), are thereby foreclosed from obtaining benefits without any legitimate governmental interest being served.

 In operative terms, the Act provides that an unmarried son or daughter of an individual, who died fully or currently insured under the Act, may apply for and be entitled to a survivor's benefit, if the applicant is under 18 years of age at the time of the application (or is a full time student under the age of 22) and was dependent within the meaning of the statute at the time of the parent's death. A child is considered a dependent for this purpose if the insured father was living with or contributing to the support of the child at the time of death. Certain children, however, are relieved of the burden of such individualized proof of dependency. Unless the child has been adopted by some other individual, a child who is legitimate, or a child who would inherit from the parent under the applicable state intestacy law, is considered to have been dependent at the time of the parent's death. Lacking this relationship under state law, a child will be entitled to a presumption of dependency if the decedent, before death, (a) had gone through a marriage ceremony with the other parent which, but for a non-obvious legal defect would have been valid, or (b) had acknowledged the child in writing, or (c) had been found by a court to be the child's father, or (d) had been ordered by a court to support the child because the child was his. Cf. *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); 42 U.S.C.A. §§ 402(d)(1), 402(d)(3), 416(h)(2)(B), 416(h)(3).

 With respect to posthumous illegitimate children whose only possible entitlement is by way of § 216(h)(3)(C)(ii) of the Act, the statute requires that two things be shown: (1) that a biological filiation does exist, and (2) that the father was living with or contributing to the support of the child at the time of the father's death. It is

this provision which is the focal point of plaintiff's constitutional attack, in which it is claimed that no governmental interest (legitimate) is served by according a presumption of dependency to legitimate children, but not to these illegitimate children, or to illegitimate children who have the good fortune to be born of parents who have taken one of the courses of action enumerated earlier, or who have no other heirs by state law. As support for this proposition, plaintiff cites *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). There the statute challenged contained language identical to that of the statute here assailed, except that it provided for disability, rather than death benefits. However, during the pendency of this appeal, the cases of *Mathews v. Lucas*, supra, and *Norton v. Mathews*, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976), were decided. It was felt by the parties and by this Court that the issues involved in those cases were sufficiently identical to the issue here to warrant a stay of the decision of this case pending their outcomes. The statute involved in both cases is the same, and the challenge thereto was erected on the same ground as plaintiff's attack in the instant case. The facts were slightly different in that the children claiming survivors' benefits in *Lucas* and *Norton* were born before the death of the father, and were actually dependent upon him at one time or another. We do not believe this difference to be of any moment.

The Court, in *Lucas*, first held that illegitimacy is not a "suspect classification," noting that, "this discrimination against illegitimates has never approached the severity or pervasiveness of the historic legal and political discrimination against women and Negroes." As a result, the Court found that the Act fails to "command extraordinary protection from the majoritian (sic) political process . . . which our most exacting scrutiny would entail." 427 U.S. at 506, 96 S.Ct. at 2762. The Court then proceeded to inquire into the question of whether a rational basis existed for the statute, observing that Congress' purpose in

adopting the statutory presumption of dependency was obviously to serve administrative convenience." In finding "administrative convenience" to be a rational basis for the statute, the Court stated:

"Such presumptions in aid of administrative functions, though they may approximate, rather than precisely mirror, the result that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as that lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny." 427 U.S. at 509, 96 S.Ct. at 2764.

The accuracy of the approximation between the statutory presumptions and the likelihood of dependency which these presumptions seek to reflect, in the Court's words, "need not be scientifically substantiated" when the applicable level of scrutiny is the one which is appropriate in this case. In this Court's opinion, plaintiff has not, by its bare assertions of discrimination, borne its burden of showing the necessary insubstantiality of the relationship between the statute and its ostensible ends.

In upholding the portions of the Act here challenged, the Court distinguished *Jimenez*, supra:

"The Court (in *Jimenez*) held the discrimination among illegitimate afterborn children impermissible, rejecting the Secretary's claim that the classification was based upon considerations regarding trustworthy proof of dependency, because it could not accept the assertion that 'the blanket and conclusive exclusion of appellants' subclass of illegitimates is reasonably related to the prevention of spurious claims (of dependency). Assuming that the appellants are in fact dependent on the claimant (father), it would not serve the purposes of the Act to conclusively deny them an opportunity to establish their dependency and their right to insurance benefits.' 417 U.S., at 636 [94 S.Ct., at 2501]."

We feel that this language invalidates the rationale of plaintiff's *Jimenez* argument. Clearly, the Court in *Lucas* felt that, where dealing with a claimant for disability benefits *whose father may still be living*, the denial of the opportunity to establish dependency in fact, at the present point in time, was indeed an irrationally imposed burden. However, where, as here, the claimant's father is dead rather than disabled, the most accurate and reasonable method of establishing dependency, under the narrow circumstances to which § 216(h)(3)(C)(ii) is applicable, must necessarily impose limitations upon afterborn children in the very real interest of avoiding spurious claims. In effect, a "sliding balance" is placed into operation, according to which the availability of bona fide proof of actual dependency determines, in direct proportion, the number of persons who may successfully claim under the statute.

We feel that the instant case is controlled by the *Lucas* decision, and for this reason and reasons assigned above, must dismiss the appeal of plaintiff in accordance therewith. Defendants' motion for summary judgment is hereby GRANTED. Judgment will be entered accordingly.