637 F.2d 1082
 UTILITY WORKERS UNION OF AMERICA AFL-CIO, and Its Michigan
State Utility Workers Council, Lewis J. Tinklepaugh,
Clarence J. Segorski, Leo Lingram, Burnell Clough, Robert
Yon, Ray Rogers and Paul De Hate, Plaintiffs-Appellees,
v.
CONSUMERS POWER COMPANY, and The Pension Plan for Employees
of Consumers Power Company, Defendants-Appellants.
 No. 78-1402.
 United States Court of Appeals,
Sixth Circuit.
 Decided Jan. 6, 1981.
As Amended Feb. 3, 1981.
 
 William O. Allen, Donovan Cheney, Marcoux, Allen, Beaman & Cheney, William M. Abbott, Arunas T. Udrys, Jackson, Mich., for defendants-appellants.
 Theodore Sachs, I. Mark Steckloff, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Kent G. Cprek, Detroit, Mich., for plaintiffs-appellees.
 Thomas P. Chuhran, Detroit, Mich., for amicus curiae Michigan Self-Insurers Ass'n.
 Jeffery S. Blum, Thorp, Reed & Armstrong, Pittsburgh, Pa., Robert L. Benham, Jr., Conklin, Benham, McLeod, Ducey & Ottaway, Detroit, Mich., for amicus curiae Nat. Steel Corp.
 Gary Murg, Labor Counsel, Burroughs Corp., Detroit, Mich., A. Carl Kaseman, III, Donald R. Crowell, II, Pepper, Hamilton & Scheetz, Washington, D. C., for amicus curiae, Burroughs Corp.
 James R. Buschmann, Bodman, Longley & Dahling, Detroit, Mich., for amicus curiae, Motor Vehicle Mfrs. Ass'n.
 Neal S. Dudovitz, Bruce K. Miller, Nat. Senior Citizens Law Center, Los Angeles, Cal., David S. Preminger, Legal Services for the Elderly Poor, New York City, for amicus curiae, Gray Panthers and Legal Services for the Elderly Poor.
 Alfred Miller, Lawrence I. Brandes, Miller, Singer, Michaelson & Raives, New York City, for amici curiae, American Ass'n of Retired Persons (AARP) and Nat. Retired Teachers Ass'n (NRTA).
 Before ENGEL and KEITH, Circuit Judges, and PECK, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 There is a single question presented by the appeal now before the Court: do the non-forfeitability provisions of the Employees Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1053(a), prohibit the reduction of pension benefits by the amount that a pensioner receives in workers' compensation insurance benefits? Although this question appears simple, it in fact raises several difficult issues of statutory interpretation. Not only is the Court required to interpret various provisions of ERISA (in conjunction with related provisions of the Internal Revenue Code of 1954 (IRC), 26 U.S.C. § 1 et seq.), the Court also is required to analyze the nature of the workers' compensation benefits that are provided by state law.
 
 
 2
 At the outset, we note that the question on appeal has recently engendered conflicting decisions in several federal courts. For example, in the United States District Court for the Eastern District of Michigan (the district in which the present action was decided), the exact question before us has now been addressed on four separate occasions. In Bordine v. Evans Products Co., 453 F.Supp. 19 (E.D.Mich.1978); Pavlovic v. Chrysler Corp., Civ. No. 7-70438 (E.D.Mich. January 10, 1978); and Carlson v. Bundy Manufacturing Co., Civ. No. 6-72274 (E.D.Mich. August 18, 1977), the district court upheld the validity of the so-called "workers' compensation offset" (i. e., the reduction in pension benefits by the amounts that pensioners receive in workers' compensation benefits). Judge Philip Pratt, the district judge in the present case, wrote the Carlson decision; however, in his opinion herein reviewed, Judge Pratt, with exemplary candor, reconsidered his reasoning in Carlson and reached the opposite result. In the present action, Judge Pratt entered summary judgment in favor of plaintiffs, and held that the reduction in pension benefits by the amount that a pensioner receives in workers' compensation benefits is a forfeiture that is prohibited by the non-forfeitability provisions of ERISA. See Utility Workers Union v. Consumers Power, 453 F.Supp. 447 (1978). Shortly after Judge Pratt issued his opinion in the present case, two decisions of the United States District Court for the District of New Jersey expressly followed his reasoning therein. See Buczynski v. General Motors Corp., 456 F.Supp. 867 (D.N.J.), rehearing denied, 464 F.Supp. 133 (1978); Alessi v. Raybestos- Manhattan, Inc., CA No. 78-0434 (D.N.J. February 15, 1979). However, on appeal, both of these cases were reversed by the Third Circuit Court of Appeals, on the ground that Congress gave its implicit approval to workers' compensation offsets in various ERISA provisions. Based on this holding, the Third Circuit concluded that ERISA pre-empted a New Jersey statute that expressly prohibited pension plans from incorporating workers' compensation offsets. See Buczynski v. General Motors Corp., 616 F.2d 1238 (3d Cir.), cert. granted --- U.S. ----, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980).
 
 
 3
 We have heard oral argument in the present case, and have reviewed the lengthy and comprehensive briefs that have been submitted by the parties and by the numerous amici. After careful consideration, we find ourselves in disagreement with the position taken by the Third Circuit in Buczynski, and we affirm the judgment of the district court herein. We are convinced that this result comports both with the statutory language of ERISA, and with the legislative history of the Act.
 
 STATEMENT OF THE CASE
 
 4
 Plaintiffs in the present case include the Utility Workers Union of America, and its Michigan State Utility Workers Council. These plaintiffs are the labor organizations that are bargaining agents for the operating, maintenance and construction employees of defendant, Consumers Power Company. Plaintiffs also include seven individual employees of Consumers Power, each of whom receives workers' compensation benefits under Michigan law, and each of whom is eligible to receive retirement benefits under the Pension Plan for Employees of Consumers Power Company.
 
 
 5
 The facts of the present case are both straightforward and undisputed. The Pension Plan for the Employees of Consumers Power provides for the calculation and payment of normal or early retirement benefits, in section V-1 of the Plan, as follows:
 
 V-1. Normal or Deferred Retirement Income
 
 6
 The monthly Retirement Income payable to an employee who, at Normal Retirement Date or at Deferred Retirement Date, retires on or after January 1, 1976, pursuant to the provisions of the Plan from the service of the Company, will be an amount equal to the product of the employee's Final Pay times the sum of the percentages determined as follows:
 
 
 7
 1 1/2 for each of the first 20 years of Accredited Service.1% for each of the next 10 years of Accredited Service.
 
 
 8
 1/2 for each of the next 10 years of Accredited Service....
 
 
 9
 The Plan further provides, in section V-2, for the reduction of a pensioner's retirement benefits by the amount of weekly workers' compensation payments that the pensioner receives from Consumers Power or its subsidiaries under the Michigan Workers' Compensation Act, M.C.L.A. § 418.101 et seq. (The Plan does not provide an offset for payments that are made in liquidation of claims or for payments for medical expenses that are made by Consumers Power under the workers' compensation law.) Section V-2 of the Plan reads as follows:
 
 
 10
 V-2. Workmen's Compensation. All workmen's Compensation weekly payments received by a retired employee from the Company, Michigan Gas Storage Company, Northern Michigan Exploration Company, or anyone else making such payments for one of those companies will be a credit against any Retirement Income or any other payments under this Plan. Monthly payments under the Plan will be reduced by the amount of such credit pursuant to the following rules:
 
 
 11
 (a) The Credit will be based on Workmen's Compensation paid during the preceding month. If Workmen's Compensation payments are made for the entire month, the credit will equal 4 1/3 weekly Workmen's Compensation payments.
 
 
 12
 (b) The maximum credit against any Retirement Income or any other payments under this Plan for Workmen's Compensation payments in any month will be the amount of such monthly payments due under this Plan for the succeeding month.
 
 
 13
 The above provision for a workers' compensation offset, which was incorporated into the Pension Plan in 1966, is the subject of the present litigation.
 
 PLAINTIFFS' ALLEGATIONS
 
 14
 In their complaint, plaintiffs attacked the workers' compensation offset of the Consumers Power Pension Plan on three statutory grounds:
 
 
 15
 (1) Plaintiffs alleged that the offset worked a partial or total forfeiture of benefits to which the individual plaintiffs had non-forfeitable rights, in violation of § 203(a) of ERISA, 29 U.S.C. § 1053(a).
 
 
 16
 (2) Plaintiffs alleged that the offset allowed Consumers Power to satisfy its workers' compensation liabilities out of Pension Plan assets, in violation of § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1). That section provides, in part, that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."
 
 
 17
 (3) Plaintiffs alleged that the workers' compensation offset amounted to an assignment of an employee's accrued retirement benefits for the purpose of satisfying Consumers Power's liability under the Michigan Workers' Compensation Act, supra. Plaintiffs argued that such assignment violated § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), which reads, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."
 
 
 18
 Upon cross-motions for summary judgment, the district court entered judgment in favor of plaintiffs, holding that the workers' compensation offset violated the vesting and forfeiture requirements of section 203(a) of ERISA. We agree with this conclusion of the district court, and thus we do not reach the merits of plaintiffs' other two allegations.
 
 STATUTORY PROVISIONS/TREASURY REGULATIONS
 
 19
 Our application of the provisions of ERISA to the workers' compensation offset now in question begins with an analysis of the minimum vesting standards that are set out in section 203 of ERISA, 29 U.S.C. § 1053. Specifically, subsection (a)(2)(A) of section 203, 29 U.S.C. § 1053(a)(2)(A), establishes the following non-forfeitability requirement:[1]
 
 
 20
 Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition ... an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.
 
 
 21
 In interpreting the scope of this non-forfeitability requirement, several definitions that are set out in § 3 of the Act, 29 U.S.C. § 1002, are relevant. For example, 29 U.S.C. § 1002(19) provides that,
 
 
 22
 the term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.
 
 
 23
 Further, 29 U.S.C. § 1002(22) defines a "normal retirement benefit" for purposes of ERISA as "the benefit under the plan commencing at normal retirement age," and 29 U.S.C. § 1002(23)(A) provides that the "accrued benefit" to which a pensioner receives a non-forfeitable right is "the individual's accrued benefit (as) determined under the (pension) plan ...."
 
 
 24
 As a part of their argument to this Court, defendants focus on the phrase "under the plan" that Congress incorporated into each of the three definitions cited above. In essence, defendants argue that a pensioner receives a non-forfeitable right only to those accrued retirement benefits that are provided by the terms of the pension plan. In other words, according to defendants, if a pension plan provides for a reduction in benefits as a part of the plan's benefit computation process, the reduced benefits are the only accrued benefits to which a pensioner gains a non-forfeitable right. We reject defendants' argument for the reason that it proves too much. As the district court correctly stated, "to hold that any forfeiture or suspension of benefits is permissible so long as it is sanctioned by the (pension) plan is to turn (ERISA's) entire statutory scheme upon its head." Utility Workers Union v. Consumers Power, supra, 453 F.Supp. at 452. (We note that the district court also stated that its prior decision in Carlson, supra, had "resulted from excessive attention to the phrase 'under the plan' found in the definitional section of ERISA...." Id. at 452, n. 8.) If this Court were to accept the reasoning of defendants, a company could legitimize any forfeiture of vested pension benefits simply by including the forfeiture into its pension plan's computation procedures. Such result, however, would be contrary both to the provisions and to the spirit of ERISA. For example, it has been held that ERISA proscribes the forfeiture of an employee's vested pension benefits when the employee, upon separation from service, engages in employment that is competitive with his former contributing employer. See, e. g., Keller v. Graphic Systems of Akron, Inc., 422 F.Supp. 1005, 1008 (N.D.Ohio 1976). In light of the illegal nature of such forfeiture for competitive employment, an employer cannot legitimize the forfeiture merely by providing in a pension plan that the benefit reduction is a computational adjustment of the plan's benefit level.
 
 
 25
 On the other hand, this Court acknowledges that not every reduction in pension benefits is prohibited by the non-forfeitability requirement of section 203. To the contrary, Congress has specifically sanctioned the practice of offsetting pension benefits by the amount that a pensioner receives in social security benefits. In establishing standards for qualified pension trusts in the Internal Revenue Code, 26 U.S.C. § 401(a)(15)(A), Congress provided that,
 
 
 26
 A trust shall not constitute a qualified trust under this section unless under the plan of which such trust is a part, in the case of a participant or beneficiary who is receiving benefits under such plan ... such benefits are not decreased by reason of any increase in the benefit levels payable under Title II of the Social Security Act ....
 
 
 27
 By prohibiting a pension benefit offset for any increase in social security payments, Congress implicitly approved the longstanding practice of offsetting pension benefits by the amount of social security payments that a participant receives at the time of his retirement. (We note that 26 U.S.C. § 401(a)(15) (A) has a counterpart in ERISA itself, 29 U.S.C. § 1056(b)(1).) Thus, certain offsets (i. e., offsets that are comparable to an offset for social security payments) are reductions in benefits that do not violate the vesting requirements of section 203.
 
 
 28
 In view of the above statutory provisions, the crux of the present appeal may be framed in the following terms: Is the workers' compensation offset that is provided in the Consumers Power Pension Plan in the nature of an offset for social security payments an offset that Congress implicitly sanctioned in the provisions of ERISA or is the workers' compensation offset a forfeiture that is prohibited by the broad non-forfeitability language of section 203(a)? In addressing this question, we note that Congress included in ERISA only limited exceptions to the general non-forfeitability requirement of section 203. (These exceptions are found in 29 U.S.C. § 1053(a)(3), and none are applicable in the present case.[2]) Further, we note that the requirement of non-forfeitability is one of the essential elements of ERISA's pension reform plan. When Congress enacted ERISA, it was concerned about employees who, after years of service to their employers, were denied pension benefits on account of their pension plan's restrictive vesting requirements. In the Act, Congress intended to provide these employees with guarantees that, after they had completed certain required years of service, they would gain unconditional and non-forfeitable rights to fixed pension benefits. Accordingly, Congress incorporated into section 203 of ERISA a broad proscription against forfeitures, and it drew only a few limited exceptions to the statutory provision. The House Committee, for example, in its comments on section 203, stated unequivocally that "with the limited exceptions noted (in 29 U.S.C. § 1053(a)(3)), no rights once they are required to be vested may be lost by the employee under any circumstance...." H.Rept. 93-807, 1974 U.S.Code Cong. & Admin.News, pp. 4639, 4725-6. In light of the broad non-forfeitability language of section 203, and in light of the legislative history that underlies that section, this Court will carefully scrutinize any offset or reduction in pension benefits in order to determine if the offset or reduction is a forfeiture that is prohibited by ERISA.
 
 
 29
 There is a final aspect of ERISA's statutory scheme that this Court is required to address in resolving the present appeal namely, the regulations and rulings that have been issued by the Treasury Department on the subject of workers' compensation offsets over the past twenty-five years. In 1956, the Treasury Department issued Regulation § 1.401-4(b). That regulation pertains to section 401(a) of the IRC, 26 U.S.C. § 401(a), and to the standards set out therein that must be met by pension plans in order to qualify for favorable tax treatment. In this regulation, the Treasury Department stated that "the total benefits resulting under (a qualified pension) plan and under such (federal or state) law (must) establish an integrated and correlated retirement system satisfying the tests of section 401(a)." In other words, in the regulation, the Treasury Department recognized that pension benefits paid to a retiree may be offset by benefits provided under federal or state law, as long as the total benefits under the plan constitute "an integrated and correlated retirement system." In 1968, 1969 and 1978, the Treasury Department interpreted Regulation § 1.401-4(b), as it pertains to section 401(a), in the specific context of workers' compensation offsets. In the revenue rulings issued in these years, the Treasury Department reasoned that an offset for workers' compensation benefits was acceptable for purposes of section 401(a) because the total benefit package provided after such offset constituted "an integrated and correlated retirement system," as required by Regulation § 1.401-4(b). See Rev.Rul. 68-243, 1968-1 C.B. 157; Rev.Rul. 69-421, 1969-2 C.B. 59; Rev.Rul. 78-178, 1978-20 I.R.B. 9. As an example of its reasoning, the Treasury Department stated in Rev.Rul. 69-421, 1969-2 C.B. 59, at page 72, the following:
 
 
 30
 ... Benefits provided under a pension, annuity, profit-sharing, or stock bonus plan may be integrated with those provided under a state or Federal program that, like the social security program, requires employer contributions and makes benefits available to the general public. Thus, benefits payable under a state workmen's compensation law or an occupational diseases law may be an acceptable offset against benefits payable under a qualified plan. However, benefits payable under a qualified plan may not be offset by disability damages recovered by an employee in a common law action against the employer. See Rev.Rul. 68-243, C.B. 1968-1, 157.
 
 
 31
 In 1977, the Treasury Department adopted Regulation § 1.411(a)-4(a) a regulation that interprets the vesting and non-forfeitability provisions of section 411 of the IRC, 26 U.S.C. § 411. That regulation reads, in part, as follows:
 
 
 32
 For purposes of Section 411 of the Code and the regulations thereunder, a right to an accrued benefit is considered to be nonforfeitable (or vested) at a particular time if, at that time and thereafter, it is an unconditional right.
 
 The regulation continues:
 
 33
 Furthermore, nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits. (Emphasis supplied.)
 
 
 34
 Defendants herein rely heavily on the above regulations and rulings of the Treasury Department. This Court finds itself in agreement with the terms of the two regulations cited above. In essence, in Regulation § 1.401-4(b) and Regulation § 1.411(a)-4(a), the Treasury Department recognizes the validity of offsets for benefits provided under federal or state law, as long as the benefits that are offset are a part of "an integrated and correlated retirement system." We agree with this principle; however, we disagree with the Department's application of the principle in its various revenue rulings. The Department specifically addressed the issue of workers' compensation offsets only in the revenue rulings cited above. Therein, the Department concluded that workers' compensation benefits are benefits that are a part of "an integrated and correlated retirement system." It is with this specific conclusion of the Treasury Department, found only in its revenue rulings, that this Court takes exception.
 
 PRELIMINARY QUESTIONS
 
 35
 Before we examine in detail the nature of workers' compensation benefits, we must address preliminary questions that have been raised by the parties on appeal. First, plaintiffs and defendants dispute at considerable length the question of whether or not the workers' compensation offset of the Consumers Power Pension Plan was the subject of free collective bargaining. This question, no matter how it is resolved, is irrelevant. Even assuming that a challenged offset has been the subject of collective bargaining, ERISA voids all private contractual arrangements in violation of its provisions. Under the terms of ERISA, employees may seek redress of an illegal forfeiture of benefits, despite the fact that their union has consented to the forfeiture in the collective bargaining process.
 
 
 36
 Second, plaintiffs and defendants dispute what weight this Court should accord the various Treasury regulations and rulings cited above. In the recent case of General Motors v. Buha, 623 F.2d 455 (6th Cir. 1980), this Circuit held that Treasury Regulation § 1.401(a)-13 was a legislative rather than an interpretative regulation, and that as such the regulation was entitled to considerable deference by the judiciary. (Regulation § 1.401(a)-13 was issued pursuant to the authority of 29 U.S.C. § 1202(c), the section that is the authoritative basis for Treasury Regulation § 1.401-4(6) and § 1.411(a)-4(a), supra.) See also Baker v. Otis Elevator, 609 F.2d 686 (3rd Cir. 1979). We note first that in the present case this Court is in disagreement only with the revenue rulings of the Treasury Department (Rev.Rul. 68-243, 1968-1 C.B. 157; Rev.Rul. 69-421, 1969-2 C.B. 59; Rev.Rul. 78-178, 1978-20 I.R.B. 9), and not with the two Treasury regulations cited above. We further note that all Treasury interpretations, legislative or otherwise, must be set aside if in the interpretation "the Secretary has exceeded his statutory authority, or if the interpretation is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " Batterton v. Francis, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). In our opinion, the above-cited revenue rulings of the Treasury Department are at odds both with the statutory language of ERISA and with its legislative history.
 
 
 37
 Finally, defendants argue that Congress was aware of those Treasury Department rulings that concluded that workers' compensation offsets were allowable under the provisions of ERISA. See, e. g., Hearings before the Subcommittee on Labor of the Committee on Labor and Public Welfare, U.S. Senate, 92nd Cong., 2nd Sess., on Retirement Income Security for Employees Act, 1972, June 28 and 29, 1972, Part 3, pp. 997-980. In light of this, defendants conclude that Congress' failure to change the relevant statutory language of ERISA was an implicit approval of the Treasury Department interpretations. We point out that the pre-ERISA interpretations of the Treasury Department to which defendants refer pertained only to section 401(a) of the IRC the "discrimination" section of the Code and not to those sections of the Code that relate to vesting and forfeitability under ERISA. Based in part on this fact, we conclude that these Treasury Department interpretations were not of such a longstanding nature or of such obviousness that Congressional failure to change ERISA's statutory language was tantamount to acquiescence in the administrative practice. See Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938).
 
 NATURE OF WORKERS' COMPENSATION BENEFITS
 
 38
 We now return to the central question presented on appeal: Are workers' compensation benefits and social security benefits "like" benefits for purposes of ERISA? (As indicated above, Congress has implicitly approved offsets for social security benefits in 26 U.S.C. § 401(a)(15)(A), supra. Thus, we assume that if workers' compensation benefits and social security benefits are "like" benefits, an offset for compensation benefits will also comport with ERISA's provisions.) This question may be rephrased to use the language of the Treasury Department: Are pension benefits, social security benefits, and workers' compensation benefits all a part of "an integrated and correlated retirement system," so that any one of the benefits may be used to offset the other under the provisions of ERISA? See Regulation § 1.401-4(b), supra.
 
 
 39
 The parties on appeal and the numerous amici have proposed several systems by which we can compare pension benefits, social security benefits and workers' compensation benefits. One such system is based on the so-called "common fund" doctrine. According to this doctrine, pension benefits, social security benefits and workers' compensation benefits are all like benefits because they spring from the same fund (i. e., they are all paid, at least in part, by the employer). This is obviously a self-serving argument for the employer, and we find it to be of little use in the present context. The fact that an employer incurs multiple liabilities, or pays multiple benefits to an employee does not, in and of itself, make all such liabilities or benefits comparable. This "common fund" doctrine may find some support in revenue rulings such as Rev.Rul. 68-243, 1968-1 C.B. 157. Therein, the Treasury Department stated:
 
 
 40
 The effect of section 401(a)(5) of the Code is to permit total (retirement) benefits, inclusive of those provided under the social security or similar program, to be used for comparative purposes.... A program, like the social security program, that requires employer contributions and makes benefits available to the general public is a similar program....
 
 
 41
 Since the benefits payable under a workmen's compensation law or occupational diseases law are available to the general public, it is held that benefits payable under such laws are acceptable as an offset against benefits payable under the qualified pension plan in the instant case. However, benefits under the plan may not be offset by disability damages recovered by an employee in a common law action against the employer.
 
 
 42
 However, we first of all question the correctness of the Treasury Department's conclusion that benefits payable under the workers' compensation law are benefits that are available to the "general public." Benefits payable under a typical workers' compensation statute are available only to a subclass of employees who have sustained a work disability (other than a normal age disability) within the course of their employment. In other words, workers' compensation benefits, unlike social security benefits and pension benefits, are available only to those employees who have fallen victim to certain unexpected disabilities. Moreover, we find that the factors set out in Rev.Rul. 68-243, supra the funding of the program through employer contributions, and the availability of benefits to the general public are merely superficial aspects of the various programs that we now consider. We find that these factors do not shed any light on the fundamental nature of pension benefits, social security benefits and workers' compensation benefits, so as to aid in a determination of whether these benefits all fit within "an interated and correlated retirement system," as required by Regulation § 1.401-4(b), supra.
 
 
 43
 There is a second and more substantive system that defendants recommended for use in comparing workers' compensation benefits with pension and social security benefits. This system is based on what we will call the "ultimate purpose" doctrine. Defendants argue that workers' compensation benefits, social security benefits, and pension benefits are all like benefits, because each is intended to provide "wage loss protection" when an employee is required to retire for a reason such as age, injury, or lack of work. In support of this argument, defendants cite state case law and academic treatises that indicate that workers' compensation is no longer a tort remedy, but is now a system of wage loss protection. See e. g., Fielder v. Travelers Insurance Co., 79 Mich.App. 449, 263 N.W.2d 9 (1977); Mazor v. State of Maryland, 279 Md. 355, 369 A.2d 82 (1977); 4 Larson, Workmen's Compensation Law § 97.51. Plaintiffs forcefully dispute this contention that workers' compensation is designed exclusively to provide wage loss protection, and they appear to view a concession on this point as fatal to their position. Further, the district court herein was careful not to hold that workers' compensation is simply in the nature of wage replacement. Judge Pratt reasoned as follows:
 
 
 44
 In Michigan, workmen's compensation is a comprehensive replacement of the traditional tort remedies and their attendant common-law defenses. Cruz v. Chevrolet Grey Iron Div., General Motors Corp., 398 Mich. 117, (247 N.W.2d 764) (1976) (Opinion of Coleman, J.); Sims v. R. D. Brooks, Inc., 389 Mich. 91, (204 N.W.2d 139) (1973). See MCLA §§ 418.131, 418.141. That this system has compensatory elements beyond mere wage replacement is evident in MCLA § 418.357 which provides for up to 50% reductions in benefits paid to persons between their 65th and 75th birthdays. Despite the relatively few individuals who can be expected to earn income during these years, the legislature has provided continued benefits for them, presumably to compensate them, at least partially, for the added burden of their occupationally acquired disability, 453 F.Supp. at 455.
 
 
 45
 We tend to agree with this reasoning of Judge Pratt. However, we do not agree that defendants will necessarily prevail in this appeal if we accept the position that workers' compensation benefits are merely a part of a wage replacement system. The fact that various benefits serve the same ultimate purpose does not necessarily render all of them like benefits, in terms of ERISA. For example, when an employee leaves his employer and begins work at a competitor's business, the employee may gain rights to pension benefits under the pension plan of the competitor. These new pension benefits serve the purpose of wage loss protection; yet if they are offset against the pension benefits that the employee has earned at his former employer's, the offset is an illegal forfeiture under the terms of ERISA. See Keller v. Graphic Systems of Akron, Inc., supra, (forfeitures for competitive employment violate the non-forfeitability provisions of ERISA). Likewise, an employee may take out a private insurance policy to provide him with wage loss protection on the occurrence of a disabling injury. These insurance benefits also serve the purpose of wage loss protection; however, under ERISA, these benefits could not be used to reduce the employee's pension benefits under the pension plan of his employer.
 
 
 46
 We conclude that retirement benefits are like benefits for purposes of ERISA only when the "source of their entitlement" is the same. Pension benefits and social security benefits, regardless of the event that triggers their payment (e. g., age or injury), are earned on account of the years of service that the employee-beneficiary has completed. In short, the years of service are the element that gives the employee the basic entitlement to the benefits. Congress focused on this fact in ERISA. When an employee devotes a substantial portion of his working life to his employer, ERISA guarantees the employee an unconditional right to pension benefits. In other words, ERISA reflects the fact that pension benefits are in the nature of deferred compensation that the employee has earned for the years of service that he has provided his employer. When Congress defined the term "non-forfeitable" in ERISA, it used the following language:
 
 
 47
 (T)he term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service....
 
 
 48
 29 U.S.C. § 1002(19) (emphasis added). The same source of entitlement, then, is the factor that makes retirement benefits "like benefits" for purposes of ERISA. In other words, retirement benefits that have the same source of entitlement are all a part of "an integrated and correlated retirement system," and these benefits may be offset against each other in accordance with ERISA's provisions. See Regulation § 1.401-4(b), supra.
 
 
 49
 In conclusion, pension benefits and social security benefits are like benefits because they are both earned on account of the years of service that an employee has completed. Workers' compensation benefits, on the other hand, are not comparable in this regard. For purposes of workers' compensation law, it is irrelevant whether an employee has been at work for twenty years, ten years, five years, or one day. Workers' compensation benefits are paid solely because an employee has sustained an occupational injury within the course of his employment. Such injury is not only the event that triggers the payment of workers' compensation benefits; it is the sole source of the employee's entitlement to these benefits. Accordingly, the reduction of pension benefits by the amount that an employee receives in workers' compensation benefits is not an offset that is in the nature of an offset for social security payments. That is, workers' compensation benefits are not a part of "an integrated and correlated retirement system" that properly includes pension benefits and social security benefits. To the contrary, the reduction of pension benefits by the amount that an employee receives in workers' compensation benefits is an illegal forfeiture that is prohibited by the non-forfeitability provision of section 203(a) of ERISA, 29 U.S.C. § 1053(a).
 
 CONCLUSION
 
 50
 Judge Pratt characterized the present case as "a tortuous struggle of inference and counter-inference drawn from a highly specialized statute and its attendant legislative history." Yet, at the same time, Judge Pratt recognized that the case touches upon human situations. This recognition is entirely consistent with the provisions of ERISA and its legislative history. ERISA was designed to eliminate the human abuses that were imposed upon employees as a result of the unfair deprivation of their pension benefits.
 
 
 51
 In this context, we make the following observations and pose the following hypotheticals. Assume that two workers, who have earned comparable wages and who have completed comparable years of service, retire. The one worker is healthy and he retires because he has reached normal retirement age. The other worker retires because he has suffered a severe work-related injury that renders him totally disabled. The injured worker receives workers' compensation benefits; however, his total benefit package remains the same because his pension benefits are reduced by his workers' compensation benefits. The healthy worker, on the other hand, receives the identical benefit package, but remains free and able to supplement his pension benefits by post-retirement work. As another example, assume that a worker who is eligible for pension benefits is totally disabled in a work-related accident. If the worker receives workers' compensation benefits, he will experience a dollar-for-dollar reduction in his pension benefits. Why should this worker file an action under a workers' compensation statute? In their brief, defendants provide an answer to this question. They point out that it is preferable from a tax point of view to receive workers' compensation benefits as opposed to pension benefits. To be kind, we find defendants' answer to be unpersuasive.
 
 
 52
 The above hypotheticals are typical of real-life situations that would occur if defendants' position on appeal were accepted by this Court. Yet, these situations are the very ones that ERISA sought to eliminate. They call to mind the specialized and technical legal terms that are applicable in this case "chilling of the right to bring a workers' compensation suit," "a penalty," "a forfeiture." Judge Pratt depicted the human element in the case in the following cogent terms:
 
 
 53
 Pensions, in contrast, represent deferred income, or other benefits foregone by the worker in hopes of a more secure retirement. See, e. g., Mosley v. National Maritime Union Pension and Welfare Plan, supra (438 F.Supp. 413). A pension plan participant must labor for the employer for a period of time before acquiring vested benefits. Upon attainment of retirement age, he or she is entitled to the agreed-upon payments. A retiree receiving pension benefits who does not have a compensable disability is in a far different position than a retiree who has, for example, lost a limb. To hold as defendants contend, that each of these two hypothetical individuals is meant to receive the same post-retirement compensation is excessively short-sighted. A person who has lost his leg has suffered a greater disruption of his life than merely diminution of his earning capacity. If the Court were to accept the defendants' argument, both the healthy and the maimed retirees would receive the same post-retirement income even though the burdens on the two are clearly disparate. 453 F.Supp. at 456.
 
 
 54
 We find Judge Pratt's reasoning to be accurate and persuasive. We affirm the district court's grant of summary judgment in favor of plaintiffs, for the reasons stated above.
 
 
 55
 ENGEL, Circuit Judge, dissenting.
 
 
 56
 I respectfully dissent. I find more persuasive the opinion of Judge Garth in Buczynski v. General Motors Corp., 616 F.2d 1238 (3rd Cir. 1980), cert. granted, --- U.S. ----, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980). In Buczynski Judge Garth makes an extensive review of the legislative history of ERISA and concludes that Congress gave its implicit approval to the prior IRS practice of allowing offsets for workers' compensation benefits. Given the breadth of the Social Security program, Judge Garth also concludes that Congress approved offsets for disability benefits.
 
 
 57
 In my opinion, the result reached by the majority's construction of ERISA is inflexible, and is at odds with the statutory and regulatory scheme. The plain language of the pension plan for the employees of Consumers Power Company, which the union now seeks to repudiate, is not inconsistent with the provisions of ERISA, but on the contrary is consistent with the eligibility requirements under the Internal Revenue Code, 26 U.S.C. § 401(a)(15)(A) (1976), and with its counterpart in ERISA, 29 U.S.C. § 1056(b)(1) (1976). Both our circuit, in General Motors Corp. v. Buha, 623 F.2d 455 (6th Cir. 1980), and the Third Circuit in Baker v. Otis Elevator, 609 F.2d 686 (3rd Cir. 1979), have recognized that Treasury Regulation § 1.401(a)-13 is a legislative rather than an interpretative regulation and as such is entitled to considerable deference by the judiciary. That regulation provides in part:
 
 
 58
 Furthermore, non-forfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other federal or state law and which are taken into account in determining planned benefits.
 
 
 59
 The majority, which states that it "finds itself in agreement" with the terms of the cited regulation, nonetheless holds that the regulation is not applicable to state laws providing for workmen's compensation benefits. In support thereof it asserts that it is not bound by the revenue rulings of the Treasury Department, which more particularly recognize that workmen's compensation law and occupational disease law, being available to the general public, are acceptable as an offset against benefits payable under a qualified pension plan. See Revenue Ruling 67-243 (1968) 1 C.B. 157.
 
 
 60
 While I readily recognize that a Treasury Department Revenue Ruling does not have the force of the regulation, it is in my opinion entirely consistent with the regulation itself and with the overall statutory scheme. It is true that workmen's compensation laws partake both of "wage loss protection" as well as an historic remedy in tort. While admittedly the issue is not without difficulty, in my opinion the majority opinion fails to refute the reasoning of Judge Garth and his recognition that workmen's compensation is in very real measure much like social security in the breadth of its coverage. See Buczynski v. General Motors Corp., supra, 616 F.2d at 1246-47.
 
 
 61
 In my opinion, the district court and the majority here appear overly concerned with the potential impact which the receipt of workmen's compensation benefits will have upon non-forfeitability where those benefits are to be received even after normal retirement age. While this is, in a sense, true, it is no more true in the case of workmen's compensation than it is with social security, and thus in my opinion it is not inconsistent with the intent of the statutory scheme. It would seem to me that the litigants ought to be as much concerned with the very direct threat to the stability of the pension plan itself by the impact of the majority's decision upon the integrity of the fund and its capability for providing real benefits to the workers at Consumers Power upon their retirement. The temporary benefits which a few may gain by the benefit of this "double dipping" must inevitably be offset by the economic realities that in the future the impact is bound to be felt in the financial weakening of an otherwise sound pension system. ERISA is a most useful addition to the body of American law which is designed to protect the working man against forfeiture of pension rights. The interpretation given the Act by the Third Circuit is, in my opinion, to be preferred because it retains flexibility, avoids potential abuse, while fully protecting the objective of the Act in assuring income protection in a variety of circumstances.
 
 
 
 [1]
 ERISA contains certain exceptions to this non-forfeitability requirement which concededly do not apply to any of the plaintiffs in this action. See 29 U.S.C. § 1053(a)(3). Congress exempted from the non-forfeitability requirement of section 203(a)(2) pension plans which provide that payment shall cease if the survivor dies, plans which suspend payments while the participant is reemployed in certain types of industries, plans in which certain amendments are made retroactive, plans in which members have voluntarily withdrawn their mandatory contributions, and plans that are designed to forestall economic failure
 
 
 [2]
 See fn. 1, supra