**Alexander KAPUSCINSKI, Plaintiff-Appellant,**

v.

**PLAN ADMINISTRATOR (The PENSION PLAN–GENERAL MOTORS CORPORATION, AND the INTERNATIONAL UNION, UAW), Defendant-Appellee.**

**No. 79–1543.**

United States Court of Appeals, Sixth Circuit.

Submitted April 7, 1981.

Decided Aug. 25, 1981.

offense." *See Smith v. Daily Mail, supra,* 443 U.S. at 108, 99 S.Ct. at 2673 (Rehnquist, J., concurring); *In Re Halkin, supra,* at 193.

Michael J. Cantor, Tanielain & Bohan, St. Clair Shores, Mich., for plaintiff-appellant.

David M. Davis, Daniel G. Galant, Detroit, Mich., for defendant-appellee.

Before BROWN and BOYCE F. MARTIN, Jr., Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BAILEY BROWN, Circuit Judge.

Appellant, Alexander Kapuscinski, brought this action in the Eastern District of Michigan to recover pension benefits allegedly withheld in violation of Michigan law and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Appellant was employed by General Motors Corporation (GM) from 1936 until February 27, 1972, when he broke seniority and retired. He qualified for pension benefits under the General Motors Hourly-Rate Employees Pension Plan (Pension Plan), a result of collective bargaining, and began receiving monthly benefits on March 1, 1972.

On March 21, 1974, appellant applied for workers' compensation and on February 19, 1976, a referee granted him an award of $89.00 per week. GM filed a timely appeal of the award and in conformity with Michigan law paid appellant 70% of the award pending the outcome of the appeal.[1] The Michigan Workmen's Compensation Appeal Board reversed the grant of benefits on November 9, 1978, by which time appellant had already received $8545.48 in workers' compensation. In the usual case, GM would have had to seek reimbursement not from appellant, but from the Michigan State Second Injury Fund.[2] In appellant's case, pursuant to specific authorization contained in the Pension Plan, GM, as administrator, deducted the amount of workers' compensation award from appellant's monthly pension benefits.[3] Thus, appellant received the same amount of benefits he would have received had there been no award of workers' compensation benefits. Appellant challenges this practice of reducing the amount of his pension payments by the amount he received as workers' compensation.

Appellant brought suit against GM in its capacity as administrator of the Pension Plan claiming that the nonforfeitability provision of ERISA, Section 203(a), 29

---

1. MCLA § 418.862 provides in part as follows:
   A claim for review filed pursuant to [MCLA § 418.859 or § 418.861] shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award.

2. MCLA § 418.862 also provides in part:
   If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursment [sic] in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5.
   The Michigan Supreme Court has held that the above language identifies the Second Injury Fund as the exclusive source of reimbursement. *McAvoy v. H. B. Sherman Co.*, 401 Mich. 419, 258 N.W.2d 414, 427 (1977).

3. Article IV, Section 2 of the Pension Plan provides that a deduction from pension benefits shall be made in the amount of workers' compensation benefits paid under a claim filed more than two years after the breaking of seniority.

U.S.C. § 1053(a), prohibited GM from deducting the workers' compensation award from his pension benefits. In addition, appellant claimed that Michigan's statutory requirement that reimbursement be obtained from the Second Injury Fund prohibited such setoffs even if they are permitted by ERISA.

The district court, Pratt, J., granted summary judgment against appellant, holding that ERISA's nonforfeitability provision did not apply to appellant because he retired before the effective date of that provision of the statute. The district court also held that MCLA § 418.862 was preempted by ERISA and could not be relied upon for relief. For the reasons expressed below, we affirm the grant of summary judgment.

■ Initially we address appellant's claim that the nonforfeitability provision of ERISA, if applicable to him, prohibits the setoffs made by GM in its capacity as administrator of the Pension Plan. At the time this case was heard in the district court, that court did not have the benefit, as does this court, of the recent Supreme Court decision, *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which is dispositive of this claim. In *Alessi,* the Court noted that the nonforfeitability provision of ERISA, Section 1053(a), "assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method of calculating the benefit." *Id.* at 512, 101 S.Ct. at 1900. The Court then discussed "integration," which it described as "a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* Elucidating, the Court stated:

Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all the retired employees, even if the nonpension funds are available only to a subgroup of the employees. The pension funds are thus integrated with the funds from other income maintenance programs, such as Social Security, and the pension benefit level is determined on the basis of the entire pool of funds. Under this practice, an individual employee's eligibility for Social Security would advantage all participants in his private pension plan, for the addition of his anticipated Social Security payments to the total benefit pool would permit a higher average pension payout for each participant. The employees as a group profit from that higher pension level, although an individual employee may reach that level by a combination of payments from the pension fund and payments from the other income maintenance source. In addition, integration allows the employer to attain the selected pension level by drawing on the other resources, which, like Social Security, also depend on employer contributions.

*Id.* The Court then held that "[t]he nonforfeiture provision of § 1053(a) has no more applicability to [integration of workers' compensation awards] than it does to the analogous reduction permitted for Social Security or Railroad Retirement payments."[4] *Id.* at 516, 101 S.Ct. at 1903. After a discussion of related agency regulations and rulings, the Court ultimately held that "Congress contemplated and approved the kind of pension provisions challenged here, which permit offsets of pension benefits based on workers' compensation awards." *Id.* at 526, 101 S.Ct. at 1908.

Thus, in the instant case, it is clear that ERISA allows GM, as administrator of the Pension Plan, to deduct any workers' compensation awards from its retirees' pensions pursuant to the Pension Plan. Accordingly, appellant's contention that ERISA prohibits such setoffs must be rejected.

■ Appellant's second contention on appeal is that because the Michigan statute requires the employer to seek reimburse-

---

4. We note here that this holding overrules a recent decision of a divided panel of this court in *Utility Workers Union of America AFL–CIO,* et al. v. Consumers Power Co., 637 F.2d 1082 (6th Cir. 1981).

ment from the Second Injury Fund in the event an award is reversed on appeal, GM cannot, by making setoffs, in effect obtain reimbursement from appellant. Consideration of this question leads to further examination of *Alessi*.

In *Alessi*, the Court considered whether a New Jersey statute that prohibited reduction of pension benefits in the amount of a workers' compensation award received by a retiree was preempted by ERISA. The Court initially noted that Congress defined the scope of ERISA in 29 U.S.C. § 1144(a), which provides in part that ERISA

> shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under 1003(b) of this title.

*Id.* at 522, 101 S.Ct. at 1906. The Court determined that this language demonstrates Congress' intent "to establish pension plan regulation as exclusively a federal concern," and establishes that state statutes that "relate to" pension plans governed by ERISA are preempted. *Id.* at 523, 101 S.Ct. at 1906. The Court concluded that the New Jersey statute "related to" pension plans governed by ERISA, and was thus preempted, as it impermissibly "eliminate[d] one method for calculating pension benefits—integration—that is permitted by federal law." *Id.* In so holding, the Court noted:

> It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly through a statute called 'pension regulation.' ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.

*Id.* It is clear, therefore, that *Alessi* also disposes of appellant's contention that the Michigan statute effectively prohibits setoffs. Assuming for the purposes of this appeal that appellant's characterization of the operation of the statute is correct,[5] it is clear that MCLA § 418.862 would "relate to" the instant pension plan. Thus, to the extent that the Michigan statute is construed to inhibit setoffs pursuant to a pension plan governed by ERISA, such as the instant plan, it, like the New Jersey statute in *Alessi*, is preempted.

Accordingly, the judgment of the district court is Affirmed.

---

**5.** We note here that this statute may not even be applicable to the instant situation. In the first place, it was enacted to alleviate the hardship that would be caused by denying benefits to claimants during the period between grant of an award and the appellate review of the grant by requiring payment of 70% of the benefits during this period. *See McAvoy, supra,* at 423. No such hardship is presented in the instant case because the retiree receives substantially the same amount of monthly income irrespective of whether he receives it in the form of pension benefits or in the form of part pension benefits and part workers' compensation. In the second place, acceptance of appellant's view of the operation of the statute would lead to an anomalous result. Because appellant relies on the provision requiring that reimbursement be obtained from the Second Injury Fund, which by its terms only comes into play when an award is reversed on appeal, the statute would prevent setoffs against pension payments only when an award was reversed and not when the award was upheld.