William P. LEE, et al., Plaintiffs,

v.

The DAYTON POWER AND LIGHT COMPANY, et al., Defendants.

No. C–3–81–324.

United States District Court, S.D. Ohio, W.D.

March 11, 1985.

---

Mike Fain, Dayton, Ohio, for plaintiff.

Gordon H. Savage, Dayton, Ohio, for defendant Dayton Power & Light.

Neil F. Freund, Dayton, Ohio, for defendant Unionmutual Stock Life Ins. Co.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART COUNT I OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND COUNT I OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DECLARATORY JUDGMENT ENTERED AGAINST PLAINTIFFS AND IN FAVOR OF DEFENDANT D.P. & L.; COUNT III OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OVERRULED AND COUNT III OF DEFENDANT D.P. & L.'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; RULING DEFERRED ON COUNT IV OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; FURTHER PROCEDURES ORDERED

RICE, District Judge.

The captioned cause comes before this Court upon cross motions for summary judgment, filed pursuant to Fed.R.Civ.P. 56(c). In Count I of his Motion, Plaintiff William Lee seeks an entry of summary judgment against both Defendants, Dayton Power and Light Company (D.P. & L.) and Unionmutual Stock Life Insurance Company (Unionmutual), jointly and severally, in the amount of $38,355.90 to compensate him for the underpayment of long-term disability benefits (LTD) to him from September 16, 1980 until his retirement in Decem-

ber, 1988. Both Plaintiff William Lee and his wife R. Bernadette Lee seek, in Count II of their motion for summary judgment, an entry in their favor and against Defendants, D.P. & L. and James H. Yates, administrator of the Retirement Plan (Amended Complaint, Doc. # 18 at 21), adjudging, decreeing and declaring that:

(a) if Mr. Lee should retire on or after his sixty-second (62nd) birthday, his estimated monthly primary social security benefit to offset against his monthly normal retirement benefit will be, and will remain, $412.00, both for the purpose of determining his normal retirement benefit and for the purpose of determining Mrs. Lee's post-retirement surviving spouse's benefit, should she survive him;

(b) if Mr. Lee should retire before his sixty-second (62nd) birthday, his estimated monthly primary social security benefit to offset against his monthly normal retirement benefit will be, and will remain, $388.00, both for the purpose of determining his early retirement benefit and for the purpose of determining Mrs. Lee's post-retirement surviving spouse's benefit, should she survive him; and

(c) if Mr. Lee should die before his retirement, his estimated monthly primary social security benefit to offset against his monthly normal retirement benefit will be, and will remain, $388.00, for the purpose of determining Mrs. Lee's pre-retirement surviving spouse's benefit.

Plaintiff William Lee also seeks, in Count III, summary judgment in his favor and against Defendants, D.P. & L. and James H. Yates, both severally and jointly, in the amount of $17,000 as statutory damages, pursuant to 29 U.S.C.A. § 1132(c), for the administrator's failure to supply requested information. Additionally, both Plaintiffs seek, in Count IV of their motion, to recover their costs, including reasonable attorneys' fees, pursuant to 29 U.S.C.A. § 1132(g) in an amount hereinafter to be determined by the Court (Doc. # 25 at 1–2).

Defendant Unionmutual, in opposition to Plaintiffs' motion for summary judgment, contends that Plaintiff William Lee's allegations concerning the underpayment of LTD benefits present genuine issues of material fact which preclude entering summary judgment in Plaintiff's favor (Doc. # 35 at 2). Unionmutual also asserts that it is entitled to an entry of summary judgment in its favor on the LTD claim, Count I of both Plaintiffs' motion for summary judgment and of Plaintiffs' Amended Complaint (Doc. # 18 at ¶ S1–18; Doc. # 34 at 1).

Defendant D.P. & L. moves for summary judgment in its favor with reference to Counts I and III of Plaintiffs' Motion for Summary Judgment. It also seeks declaratory judgment determining the amount of social security offset in the event of Plaintiff William Lee's death or early retirement prior to age 62 to be the rate of Social Security offset in effect on January 1 in the year of death or early retirement, the subject matter of Count II of Plaintiffs' motion for summary judgment and Amended Complaint (Doc. # 18 at ¶ 19–32; Doc. # 36 at 1–2).

## I. FACTUAL BACKGROUND

A review of the record, including supporting affidavits, reveals the following:

Plaintiff William Lee, born on November 14, 1923, became an employee of D.P. & L. on September 4, 1946 (Affidavit of William P. Lee, Doc. # 26 at ¶ 2). On February 9, 1969, while still in the employ of D.P. & L., Plaintiff William Lee sustained a heart attack (Lee Affidavit, Doc. # 26 at ¶ 4 and 31). As a result of his heart condition, Plaintiff William Lee became totally and permanently disabled on November 15, 1979 (Lee Affidavit, Doc. # 26 at ¶ 5). Before November 15, 1979, Plaintiff read about D.P. & L.'s disability and pension plan in a handbook entitled "Your Benefits at Dayton Power & Light" (Handbook) (Summary Plan Description) and in a booklet entitled "D.P. & L. Total Compensation Program" (Booklet). (Lee Affidavit, Doc. # 26 at ¶ 6 and 12).

## A. LONG-TERM DISABILITY PROVISIONS

Plaintiff William Lee read in one portion of the Handbook that a disabled employee's social security disability benefits would be offset from the LTD benefits due the employee under the long-term disability plan. The Handbook described these offsets as "benefits received by you for yourself or dependents when eligible." In another paragraph, he read that the LTD plan provided for offsetting "social security benefits for yourself and dependents" (Lee Affidavit, Doc. # 26 at ¶ 7). Plaintiff William Lee avers that he understood the Handbook language to mean that any social security benefits he received for his *minor* dependents would be offsets under the LTD plan, "but that any social security benefits which might be received by *others* on account of [his] disability would not be so offset" (Lee Affidavit, Doc. # 26 at ¶ 8). Plaintiff William Lee further alleges that "although [his] adult daughters have received social security benefits on account of [his] disability, [he has] never received any portion of those benefits, [has] no control over their disposition, and [has] no legally enforceable obligation to provide support to any of [his] children, all of whom are the age of eighteen and older" (Lee Affidavit, Doc. # 26 at ¶ 9).

The original Unionmutual LTD policy provided *inter alia* that income benefits, payable to the insured employee's child or children for the same period of disability for which a monthly benefit is payable to the insured under the LTD policy, constitute offsets against the monthly benefit that otherwise would be payable to the insured employee (Doc. # 26, Attachment F, GP60–21C (LTD) 69–A). On April 18, 1980, Unionmutual issued Amendment # 4 to its disability insurance policy, the disability element of D.P. & L.'s employee benefit package. (Doc. # 26, Attachment G, GR3892 P–1). The Amendment, in direct contrast with the original policy (Doc. # 26, Attachment F, GP60–21C (LTD) 69–A), and retroactive to disabilities commencing on or after January 1, 1979, (Doc. # 26, Attachment G, GR3892 P–4), provided that "any

income benefits for which the employee's spouse, child or children are eligible under the United States Social Security Act … will *not* be considered as other income benefits" which reduce the monthly benefit payable under the policy (Doc. # 26, Exh. G at ¶ 6 and 7) (emphasis added).

On June 3, 1980, two employee benefits specialists from D.P. & L., Bruce Espy and Marie Nieffer, met with Plaintiff William Lee and explained to him that he could opt either to retire, thereby qualifying for retirement benefits, or receive LTD benefits (Supplemental Affidavit of Bruce Espy, Doc. # 39 at ¶ 3 and 4; Affidavit of Marie Nieffer, Doc. # 40 at ¶ 3–5). Bruce Espy avers that he explained, both in person and by follow-up memo, to Plaintiff William Lee that Lee's "payment would be offset by Social Security payments received by [him] and his dependents on behalf of his disability" (Espy Affidavit, Doc. # 39 at ¶ 3, and attached memo dated June 3, 1980). Plaintiff denies that any D.P. & L. employee told him about offsets from his LTD benefits for Social Security benefits received by his children (Second Supplemental Lee Affidavit, Doc. # 42 at ¶ 2 and 3).

On or about July 30, 1980, Plaintiff William Lee first received and read the Unionmutual Policy with Amendment # 4 attached (Supplemental Lee Affidavit, Doc. # 38 at ¶ 3). In response to Plaintiff William Lee's further inquiries, Elaine Mifflin, a Unionmutual disability benefit specialist, wrote to Plaintiff William Lee on August 13, 1980, and stated that the original policy language provided for offsetting the LTD monthly benefit by the amount of Social Security benefit Plaintiff William Lee and his children received and that the amount of this offset was the amount of Social Security benefits that Plaintiff William Lee and his daughters received as of September, 1980, the month in which LTD payments to Plaintiff William Lee commenced (Supplemental Espy Affidavit, Doc. # 39 at

¶ 5, attached letter dated August 13, 1980 to William Lee from Elaine Mifflin).[1]

Plaintiff William Lee's entitlement to Social Security disability benefits commenced in May, 1980 in the amount of $505.20. Due to amendments in the Social Security Act, this monthly benefit increased to $577.50 in June, 1980. Each of Plaintiff's three adult daughters received Social Security benefits, due to their father's disability, in the amount of $126.00, payable for May, 1980. In June, 1980, this payment increased to $144.00 (Lee Affidavit, Doc. # 26 at ¶ 18, 32 and Exh. D).

After applying for LTD payments on June 3, 1980 (Supplemental Lee Affidavit, Doc. # 38 at ¶ 4), Plaintiff William Lee began receiving monthly LTD payments from Unionmutual on September 16, 1980 (Lee Affidavit, Doc. # 26 at ¶ 16) in the amount of $498.60. The LTD payment included offsets of $144.00 for Social Security benefits received by each of Plaintiff's three adult daughters and an offset of $577.50 for Plaintiff William Lee's Social Security benefits (Doc. # 25 at 14).[2] Plaintiff, in his motion for summary judgment, contends that there should be no offset of Social Security benefits received by his children, and that his Social Security disability offset should be frozen at $505.20, the amount of his May, 1980 disability benefits payment.

## B. RETIREMENT BENEFITS

D.P. & L.'s Retirement Income Plan Two provides that an employee's projected Social Security retirement benefit shall be offset from retirement benefits otherwise payable under the plan (Lee Affidavit, Doc. # 26, Exh. H at 22). However, the plan does not address specifically on what basis that offset, known under the plan as "Primary Social Security," will be determined for a disabled employee who takes early retirement (before attaining age 62) or dies before retiring. The plan, however, freezes the offset for a disabled employee who remains in employment, e.g., continues to be eligible for LTD benefits, until he attains age 62, at the amount of projected Social Security benefit the employee became entitled to on the January 1 of the year in which he became disabled (Lee Affidavit, Doc. # 26, Exh. H at 7).

Plaintiff William Lee read about these provisions in the Handbook before November 15, 1979. In particular, the Handbook stated that:

> If you become totally and permanently disabled before retirement, your eligibility and benefit service under the plan continues to build as long as you're eligible for and receiving benefits from the company's long-term disability plan. At age 62, you receive a benefit based on your final average monthly pay at the time you were disabled. The amount of social security used to figure your retirement benefit will be the amount estimated that you could receive at age 62 under the social security act in effect on the January 1 of the year you become disabled. In figuring the amount of your primary social security, the plan will assume you continued to work until age 62 at the same salary you were earning when the disability started (Lee Affidavit, Doc. # 26, Exhibit D at 15).

In a letter to Plaintiff William Lee, dated July 3, 1980, which followed his meeting with D.P. & L., employee benefit representative Marie Nieffer of D.P. & L. stated that if Plaintiff opted to receive LTD and remain on LTD until age 62, the retirement benefit computation would use the "frozen" Social Security amount effective at the time of his disability. If, however, he decided to retire before attaining the age of

---

1. Strictly speaking, this letter does not constitute a proper supporting document under Fed. R.Civ.P. 56(c). However, in the absence of objection by Plaintiffs, the Court considers this correspondence.

2. The calculations described in the text appear in Plaintiffs' memorandum in support of their motion for summary judgment (Doc. # 25 at 14). Although said calculations do not technically appear in materials appropriate for consideration in ruling on motions for summary judgment, the Court does treat them as the actual amounts at issue herein in the absence of objection by Defendants.

62, the Social Security offset would be computed through use of the "current" table effective in the year of retirement (Nieffer Affidavit, Doc. # 40, attached letter).

In the instant case, Plaintiff William Lee elected optional surviving spouse benefits in accordance with the plan (Lee Affidavit, Doc. # 26 at ¶ 30). The plan provides that the determination of this benefit rests in part on the monthly retirement benefit the "deceased member would have been entitled to receive beginning as of his *early retirement* if he had retired . . . on the date immediately preceding the day on which he died. . . ." (Lee Affidavit, Doc. # 26, Exh. I at 28). Again, these provisions do not mention methods of computing the benefit due the surviving spouse of a disabled employee. Plaintiff William Lee seeks a declaration by this Court of his Primary Social Security offset for purposes of both his retirement benefit and those benefits which could become due to his surviving spouse (Doc. # 25 at 1–2).

### C. REQUEST FOR ADMINISTRATION MANUAL

Plaintiff, by letter dated February 2, 1981, requested from James Mauch, D.P. & L.'s Coordinator of Benefits Administration, the manual used in administering the benefit program (Lee Affidavit, Doc. # 26 at ¶ 27 and Exhibit I) which contained the rate tables used to estimate a participant's Social Security benefits (Lee Affidavit, Doc. # 26, Exhibits J, K and L), for offset purposes under the retirement plan. Although Mauch did deliver to Plaintiff William Lee the other materials which he had requested (e.g., copies of the group life insurance contract, Retirement Income Plan Two and the Unionmutual LTD policy) (Affidavit of James R. Mauch, Doc. # 36 at S5 and 6), Mauch refused to tender the administration manual since, in his opinion, Section 104(b)(4) of ERISA, 29 U.S.C.A. § 1024(b)(4), did not require him to do so. James Mauch avers that he did furnish Plaintiff William Lee with the computational tables on April 1, 1981 (Mauch Affidavit, Doc. # 36 at ¶ 9). Plaintiff William Lee, however, asserts that he did not receive the tables until August 24, 1981, approximately

two hundred days after his request for the administration manual, when his attorney received them as an exhibit to answers to interrogatories from D.P. & L.'s attorney (Lee Affidavit, Doc. # 26 at ¶ 28).

### II. SUMMARY JUDGMENT STANDARD

In ruling on these cross motions for summary judgment, the Court follows the standard set forth in Fed.R.Civ.P. 56(c). This rule, in pertinent part, provides that "[t]he judgment sought shall be rendered forthwith if the pleadings . . . and . . . affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering these motions, the Court determines whether there are issues to be tried, but the Court cannot try disputed facts. *See Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir.1976); *DePlanche v. Califano*, 549 F.Supp. 685, 687 (W.D.Mich.1982).

■ Even though all parties to this action, by moving for summary judgment in their favor, argue that no genuine issue of material fact exists, the Court still must review the materials appropriate for consideration under Fed.R.Civ.P. 56(c) to determine whether a genuine issue as to a material fact exists, *see Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948), and whether each party has carried its burden under the summary judgment standard. Failure by a party to carry its burden does not automatically mean that the opposing party has satisfied the summary judgment test, and is therefore entitled to a judgment as a matter of law; rather, the Court applies Fed.R.Civ.P. 56(c) to each party's motion separately and independently. *See* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2720, at 17–25 (2d ed. 1983).

### III. AMOUNT OF PLAINTIFF'S LTD BENEFIT

### A. OFFSET OF CHILDREN'S SOCIAL SECURITY BENEFITS

Both Defendants argue that they never intended Amendment # 4 to change the

original policy clause providing for offsetting Social Security benefits received by the children of a disabled employee as a result of the employee's disability. Rather, in their view, Amendment #4 was designed simply to ensure compliance with the Age Discrimination in Employment Act which became effective on January 1, 1979 (Mauch Affidavit, Doc. #36 at ¶9; Affidavit of James H. Yates, Doc. #35 at ¶4; Affidavit of Carey B. Swope, Doc. #35, at ¶5). Unionmutual, by way of affidavit, asserts that through *inadvertent clerical error*, the original policy provision offsetting family Social Security benefits was not carried forward to Amendment #4 as Defendants had intended (Yates Affidavit, Doc. #36 at ¶4; Swope Affidavit, Doc. #35 at ¶5). Defendants contend that said clerical error should not result in a windfall to Plaintiff William Lee (Doc. #35 at 13; Doc. #36 at 19) and that the policy should be reformed so as to eliminate the mutual mistake, thereby reflecting the intention of the contracting parties, D.P. & L. and Unionmutual (Doc. #35 at 13–14).

The mutual mistake alleged by Defendants appears in paragraphs 6, 7 and 8(B) of

Amendment #4. Paragraphs 6 and 7, which concern the calculation of an employee's LTD benefits, explain that "other income benefits" are offset against a certain percentage of the disabled employee's basic monthly earnings in calculating monthly LTD benefits. Both paragraphs 6 and 7 contain an exception which provides that "other income benefits," as used in those paragraphs, does not include "[a]ny income benefits for which the employee's spouse, child, or children are eligible under the United States Social Security Act." (Lee Affidavit, Doc. #26, Exh. G at ¶6, 7).

Paragraph 8(B) of Amendment #4 reinforces the position of Paragraphs 6 and 7 with respect to Social Security benefits received by the children of a disabled employee. In its enumeration of the types of "other income benefits" to be offset against earnings in calculation of LTD benefits, Paragraph 8(B) fails to mention Social Security benefits received by the spouse, child or children of the employee. (Lee Affidavit, Doc. #26, Exh. G at ¶8(B)).

■ The Court looks to Ohio law in interpreting this insurance contract.[3] Two deci-

---

**3.** The Court is in agreement with the parties that Ohio case law pertaining to the interpretation of insurance contracts is applicable in the instant case. The Employee Retirement Income Security Act (ERISA) provides that the term "employee welfare benefit plan" includes "any plan, fund or program ... maintained for the purpose of providing for its participants or beneficiaries, *through the purchase of insurance or otherwise* ... benefits in the event of ... disability." 29 U.S.C. § 1002(1)(A) (emphasis added). ERISA covers the disability plan in the instant case, given that Plaintiff's employer, D.P. & L., established the plan through the purchase of insurance from Unionmutual for the purpose of providing disability benefits for its employees. *Eversole v. Metropolitan Life,* 500 F.Supp. 1162, 1165 (N.D.Cal.1980); *Cate v. Blue Cross,* 434 F.Supp. 1187, 1190 (E.D.Tenn.1977).

One of the goals of Congress in passing ERISA was the desire to ensure uniform and reasonable federal requirements for private pension and welfare plans. In pursuit of this goal, Congress provided in the ERISA legislation a rather intricate statutory scheme to determine when state laws would be preempted by ERISA. The primary pre-emption provision, 29 U.S.C. § 1144(a), provides:

[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any

and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b).

An exception to this pre-emption of state laws which "relate to" ERISA-covered plans is then provided in 29 U.S.C. § 1144(b)(2)(A):

Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance.

"State law" is defined in 29 U.S.C. § 1144(c)(1) to include "laws" as well as "decisions, rules, [and] regulations."

Finally, 29 U.S.C. § 1144(b)(2)(B) completes the sequence by stating that:

[A]n employee benefit plan ... shall [not] be deemed to be an insurance company or other insurer ... engaged in the business of insurance ... for purposes of any law of any state purporting to regulate insurance companies [or] insurance contracts.

Neither the ERISA statute nor its legislative history defines what type of law "regulates insurance" for purposes of ERISA's pre-emption provisions. Other federal courts have, as a result, sought guidance on the issue from the Supreme Court's definition of virtually identical language in the McCarran-Ferguson Act, 15

sions of the Ohio courts, *Carucci v. John Hancock Mutual Life Insurance Company*, 15 Ohio App.2d 1, 238 N.E.2d 572 (1968) and *Talley v. Teamsters*, 48 Ohio St.2d 142, 357 N.E.2d 44 (1976), figure prominently in this process.

In *Carucci*, an employee group insurance policy provided that an insured employee (Plaintiff's decedent) had two options upon becoming disabled, namely: (1) he could take a lump sum disability benefit of $3,000 in settlement of his rights under the group insurance plan or, alternatively (2) he could convert the insurance in force at the time of the termination of his employment, without medical examination, into an individual ordinary policy of life insurance if timely application was made. Upon becoming totally and permanently disabled, the insured elected and did receive the $3,000 lump sum disability payment. The insured also made a timely application, however, to convert the insurance in force at the time of his termination into an individual life insurance policy. After the insured's employer, to whom Defendant John Hancock had issued the group insur-

U.S.C. §§ 1011–15. In *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Supreme Court defined the scope of state laws "regulating the business of insurance" for purposes of the McCarran-Ferguson Act, and held that a state law protecting the shareholders of insurance companies was not encompassed by that phrase:

> ... Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply.... Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which *Paul v. Virginia* [, 8 Wall. 168, 19 L.Ed. 357] held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, the other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance."

393 U.S. at 459–60, 89 S.Ct. at 568–69.

Those courts which have read *SEC v. National Securities* in the context of ERISA's pre-emption provisions have construed it as a declaration of state primacy in the regulation of insurance. As such, they have reasoned that 29 U.S.C. § 1144(b)(2)(B), which creates an exception to the savings clause for state insurance laws by preventing employee benefit plans from being "deemed" to be insurance companies, does not pre-empt indirect regulation of plans through the regulation of insurance policies purchased by those plans. *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 700 (7th Cir.1977). Under this rationale, state law has been held applicable to alleged denials of bene-

fits and breaches of fiduciary duty under ERISA-covered group insurance policies, *Eversole*, 500 F.Supp. at 1169, and to resolve ambiguities in ERISA-covered plans with respect to the terms of such insurance coverage. *Cate*, 434 F.Supp. at 1188, 1190.

This Court does not believe that the decision of the United States Supreme Court in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), and the Sixth Circuit's application of *Alessi* in *Kapuscinski v. Plan Administrator*, 658 F.2d 427 (6th Cir.1981) dictate a contrary result. In both *Alessi* and *Kapuscinski*, state laws which indirectly regulated ERISA-covered plans were deemed to "relate to" an employee benefit plan and were thus pre-empted under 29 U.S.C. § 1144(a). In *Alessi*, the New Jersey workers' compensation statute in question was found to impermissibly eliminate the one method of pension benefit calculation permitted by federal law. In *Kapuscinski*, the Sixth Circuit believed a Michigan statute which prohibited setoffs pursuant to a pension plan governed by ERISA, despite the ERISA statute's tolerance of such setoffs, to "relate to" an ERISA-covered plan and thus to be pre-empted by ERISA.

The Sixth Circuit in *Kapuscinski* reiterated the position of *Alessi* that the primary focus of pre-emption under ERISA is not whether the state intrudes directly or indirectly into pension regulation, but rather whether the state regulation "encroaches upon [an] area of exclusive federal concern" by more than tangentially affecting the employee benefit plans in question. 658 F.2d at 430. *See Mich. United Food Com. Wkrs. Union v. Baerwaldt*, 572 F.Supp. 943, 948–50 (E.D.Mich.1983). Unlike the state statutes at issue in *Alessi* and *Kapuscinski*, the Ohio case law at issue herein does not dictate the terms or conditions of employee benefit plans in the intrusive fashion found impermissible in those cases. Given the tangential relationship of this body of insurance law to the ERISA-covered plan in question, this Court believes the application of Ohio law to the particular issue of ambiguity herein to be permissible.

ance policy, mistakenly advised Defendant that the reason for the insured's termination of employment was a "lay-off" rather than disability, Defendant without further inquiry issued a policy of ordinary insurance on the life of the insured. 15 Ohio App.2d at 3, 238 N.E.2d at 573–74.

Upon the insured's death and Plaintiff's request for payment under the ordinary insurance policy, Defendant contested the claim both on the grounds of mutual mistake between itself and the insured's employer and on the basis of its own unilateral mistake of a material fact. Rejecting Defendant's claim of mutual mistake of fact, the appellate court held that Defendant's unilateral mistake of material fact also would not permit Defendant to avoid payment to Plaintiff under the mistakenly-issued ordinary insurance policy:

> As a general proposition, relief for a unilateral mistake of a material fact will be denied where the mistake is the result of the party's own negligence. Rather than an honest mistake of fact in this case, defendant must be charged absolutely with knowledge of payment by it of the disability benefit followed by the negligent blunder of accepting the application for ordinary insurance on a conversion basis.

15 Ohio App.2d at 3, 238 N.E.2d at 574.

In *Talley*, an employee belonged to a group insurance plan, provided by Defendant, which promised him a $3,000 life insurance benefit. Due to a clerical error, Defendant sent the insured employee, in addition to his certificate of insurance, a pamphlet which indicated that the plan provided him with a $7,000 life insurance benefit. Upon the death of the insured employee, Plaintiff, his beneficiary, sought a $7,000 payment from Defendant. The state trial court, relying on *Carucci*, issued a declaratory judgment that Plaintiff was entitled to $7,000. The appellate court, distinguishing *Carucci*, entered judgment for only $3,000 in favor of Plaintiff. 48 Ohio St.2d at 143, 357 N.E.2d at 45.

On appeal, the position of the appellate court in *Talley* was upheld. The Ohio Supreme Court did not believe Defendant to be bound by the pamphlet inadvertently sent to the insured employee, reasoning that "the provisions of the group policy are controlling over the provisions of the certificate, and the rights of the parties in a group insurance enterprise are dependent upon the group contract." 48 Ohio St.2d at 144, 357 N.E.2d at 46. As the master policy between the insured's employer and Defendant had provided for a $3,000 life insurance benefit, the Supreme Court believed Plaintiff to only be entitled to $3,000. The Court cited several reasons for distinguishing *Carucci*, the primary one being that whereas *Carucci* had involved an unconditionally-issued life insurance policy, *Talley* involved the legal significance of an erroneously-mailed pamphlet describing a benefit to which the insured was not entitled under his insurance policy. 48 Ohio St.2d at 145–46, 357 N.E.2d at 46.

■ In the view of the Ohio Supreme Court, its decision in *Talley* does not conflict, but rather stands alongside, that of the appellate court in *Carucci*. Taken literally, the language of the Ohio Supreme Court in *Talley* indicates that, in the context of this case, the express language of Amendment # 4 to the insurance policy provided by Defendant Unionmutual should control the calculation of Plaintiff's LTD benefits. As in *Carucci*, which appears even more analogous to the situation in the instant case, despite Defendant's contention of mutual mistake, the only real mistake appears to be that of Defendant Unionmutual in drafting paragraphs 6, 7 and 8(b) of Amendment # 4. Like the court in *Carucci* this Court believes that Defendant Unionmutual should be charged absolutely with knowledge of the language which it incorporated and omitted from Amendment # 4 as a result of the alleged mistake in drafting.

Thus, the Court holds as a matter of law that the clear, unequivocal language of Amendment # 4 controls Plaintiff William

Lee's LTD offsets,[4] even if he is the only insured employee to so benefit from the erroneous language. Thus, on the basis of Amendment #4 alone,[5] Defendants shall not offset from Plaintiff William Lee's LTD benefits the amount of Social Security benefits received by his three adult daughters as a result of his disability. Count I of Plaintiff's Motion for Summary Judgment as it pertains to the Social Security benefits received by his adult daughters is sustained and those portions of Count I of Defendants' Motions for Summary Judgment relevant to this issue are overruled.

## B. AMOUNT OF OFFSET OF PLAINTIFF'S SOCIAL SECURITY BENEFIT

■ .The Court next considers Plaintiff's claim that his Social Security offset for LTD purposes should be frozen at $505.20, the monthly Social Security benefit he received in May, 1980, four months before the commencement of payment of benefits from the LTD policy. In June, 1980, due to amendments in the Social Security Act,

Plaintiff's monthly Social Security benefit increased to $577.50. In September, 1980, the month in which payments from the LTD policy commenced, Plaintiff's monthly Social Security benefit was $577.50. (Lee Affidavit, Doc. #26 at 10; Exh. D).

The disability insurance policy provides that:

> If an Insured Employee becomes entitled to receive Monthly Benefits under the Policy, the amount of his benefit *when initially computed* in accordance with the foregoing will not be reduced due to a change in such Plan or Act. (emphasis added) (Doc. #35, Exh. A at 12; Doc. #26, Exh. F, GP60–22C (LTD) 69(28).[6]

The policy neither defines nor illuminates the terms "when initially computed." Furthermore, no party to this lawsuit has attempted to identify the point in time at which the amount of Plaintiff William Lee's LTD benefit was "initially computed."

Thus, the Court looks to applicable sections of the Handbook (Summary Plan De-

---

**4.** In support of the proposition that an insured employee under a group disability policy is a party to the contract and that a policy should not be reformed, due to mistake, to the detriment of the insured party, *see Insurance Company of North America v. Bechtel*, 36 Cal.App.3d 310, 111 Cal.Rptr. 507 (1973).

**5.** Assuming *arguendo* that the clear language of Amendment #4 does not control the instant case and that Plaintiff William Lee's reliance on the Handbook was dispositive of the offset issue, the Court notes that it would probably overrule all motions for summary judgment and thereby require the parties to adduce evidence on the disputed issue of Plaintiff William Lee's reliance on the Handbook (Summary Plan Description) and statements made by Defendants' employee benefit agents. With reference to the reasonableness of Plaintiff William Lee's interpretation of the applicable Handbook provisions, the Court states, in response to Plaintiff's argument that the amounts his adult daughters receive from Social Security do not constitute "dependent's" benefits since the payments do not inure to Plaintiff William Lee's control or benefit, that the benefits payable to any child who qualifies for Social Security benefits because of the death or disability of a parent inure to the child, and not the child's parent(s), regardless of the child's age. *Fuller v. Fuller*, 49 Ohio App.2d 223, 360 N.E.2d 357, 358 (Summit

1976). *See* 42 U.S.C.A. § 402(d)(1) (1974 and Supp.) *See also* 42 U.S.C.A. § 401(h) (1974).

Applying the Social Security statute's use of the term "dependent," one court has held that a child is considered a dependent if the insured father was living with or contributing to the support of the child at the time of the death [disability]. *Kimbrell v. Mathews*, 429 F.Supp. 440, 444 (M.D.La.1977). This definition also comports with commonly-held notions of what constitutes a dependent child. In ordinary parlance, a dependent child is one who lacks the necessary means of support and receives aid from others such as a public agency. Webster's New International Dictionary at 604 (3rd ed. 1976). The age of eighteen does not serve as a bright line test of dependency in the ordinary meaning.

Furthermore, since this Court understands that both D.P. & L. and Unionmutual intended for references to "dependent" to include adult children who receive Social Security benefits and that this inclusion comports with the ordinary use of the term, the Court would deem it reasonable, if not compelling, that, under the Handbook language, the adult daughters' benefits would be offsets to Plaintiff William Lee's LTD payment in the absence of Amendment #4.

**6.** Presumably, Amendment #4 did not alter this provision.

scription)[7] to interpret at what point the "freeze" of the Social Security offset takes place. The Handbook provides the following:

> Your total LTD benefit is made up of layers .... Each layer represents a source of benefit income. These layers could include:

> \* \* \* \* \* \*

> Social Security disability or retirement benefits received by you for yourself or dependents when eligible.

> \* \* \* \* \* \*

> If your social security benefits increase after you begin receiving LTD benefits, your benefits from D.P. & L. won't be reduced. (Doc. # 26, Exh. B at 4–5).

Plaintiff William Lee argues that when he received his May, 1980 Social Security disability benefit, he had begun receiving "LTD benefits", presumably since Social Security constitutes a layer of said LTD benefits. In addition, he argues that he relied on his interpretation. Accordingly, Plaintiff contends that the "freeze" in the amount of his Social Security benefits occurred with the initial payment in May, 1980 in the amount of $505.20 (Doc. # 25 at 33–35).

Unionmutual contends that no legal authority supports the conclusive effect of Plaintiff William Lee's expectations and that the reasonableness of any such expectation is a genuine issue of material fact which is inappropriate for resolution as matter of summary judgment (Doc. # 35 at 18). D.P. & L. notes that the Handbook, in bold-face print, also states that "LTD works with benefits from *other sources* to replace part of your base pay while you're disabled." (emphasis added) (Doc. # 36 at 1; Doc. # 26, Exh. B at 4). Based on this language, D.P. & L. argues that the LTD benefit is distinct from the Social Security

benefit, the latter being a benefit from "other sources."

In the opinion of this Court, it is clear from a reading of the language of the policy (Doc. # 26, Exh. F at GP60–21C (LTD) 69–A and GP60–22C (LTD) 69(28); Exh. G at ¶ 6, 7 and 8B) as well as the bold-face language in the Handbook cited above, that the policy does not equate Social Security benefits with LTD benefits. Rather, the Social Security benefit is one from "other sources" which constitutes an offset from LTD benefits otherwise payable. Moreover, in this Court's view, Plaintiff William Lee's Social Security benefit payable only for the month of May, 1980, over four months before the commencement of payment of his LTD benefit, does not represent the frozen offset. Implicit in any reasonable reading of the Handbook provision which assures employees that increases in Social Security benefits *after* the commencement of LTD benefits will not reduce benefits provided by D.P. & L. is that increases in Social Security benefits *before* the commencement of payment of LTD benefits may be properly offset from LTD benefits.

Thus, the Court concludes that Plaintiff William Lee's Social Security offset is $577.50, the amount of Social Security he received each month from June, 1980 through September, 1980, the month in which payment of his LTD benefits began. Accordingly, the Court overrules Count I of Plaintiff's Motion for Summary Judgment insofar as this Count pertains to the amount of his Social Security offset. In so doing, the Court sustains the relevant portions of Count I of Defendants' Motions for Summary Judgment.[8]

## IV. AMOUNT OF RETIREMENT BENEFITS

This Court next considers the parties' request for declaratory relief as to the

---

**7.** 29 U.S.C.A. § 1022(a)(1) provides in relevant part that a summary plan description "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

**8.** Having concluded *supra* that the Social Security benefits payable to Plaintiff William Lee's adult daughters as a result of his disability do not constitute offsets from his LTD benefit, the Court does not address what the amount of these offsets would be if they were, in fact, proper offsets under the policy.

amount of Social Security benefit that should be used to compute the retirement benefit due Plaintiff William Lee and his surviving spouse upon his death.

Under Section 4.1(b)(2) of D.P. & L.'s Retirement Income Plan Two, a retired employee's projected Social Security retirement entitlement, as determined from tables contained in the Plan Administration Manual, is to be used as an offset in determining the employee's total service retirement benefit (Doc. # 26, Exh. H at 22). Section 2.1(r)(1–4) of the Plan provides that, once the amount of the Social Security offset is determined, it is "frozen," that is, it remains constant throughout the lifetime payments of the retired employee. (Doc. # 26, Exh. H at 6–7). The plan defines the offset, Primary Social Security, in Section 2.1(r)(1–4), as follows:

*"Primary Social Security"* means the monthly benefit which a retired, disabled or terminated Member receives or would be entitled to receive, as a primary insurance amount under the U.S. Social Security Act, as amended, whether he applies for such benefit or not, and even though he may lose part or all of such benefit for any reason. The amount of such Social Security Benefit to which the retired, disabled or terminated Member is or would be entitled shall be estimated and computed under a method approved by the Retirement Board for the purposes of the Plan as of the January 1 of the calendar year of the first to occur of his retirement, disability, termination, or 62nd birthday on the following basis:

(1) For a Member who retires on or after his Normal Retirement Age, on the basis of the U.S. Social Security Act as amended and in effect, and the rate in effect, on the January 1 coincident with or next preceding his 62nd birthday (regardless of any retroactive changes made by legislation enacted after said January 1).

(2) For a Member entitled to an early retirement benefit, on the basis of the U.S. Social Security Act as amended and in effect, and the rate in effect, on the January 1 coincident with or next preceding his termination of Service (regardless of any retroactive changes made by legislation enacted after said January 1), and if he retires before his 62nd birthday, assuming that he had no earnings after his termination of Service for purposes of determining his primary insurance amount under the U.S. Social Security Act.

(3) For a Member who becomes disabled prior to his 62nd birthday but who remains in employment (i.e. a Severance From Service has not occurred), on the basis and at the rate of the U.S. Social Security Act as amended and in effect on the January 1 coincident with or next preceding the date his disability occurs (regardless of any retroactive changes made by legislation enacted after said January 1), assuming that he had earnings after his disability at the same rate of compensation in effect prior to his disability until his 62nd birthday.

(4) For a Member entitled to a deferred vested retirement benefit.... (Doc. # 26, Exh. at 6–8).

None of the above provisions expressly addresses the question posed by Plaintiff as to how "Primary Social Security" should be computed for an employee totally and continuously disabled before attaining age 62 who then retires early. Plaintiff's position is that Section 2.1(r)(3) controls and that the amount of his Primary Social Security should be frozen at its 1980 level, the year in which he became disabled. He cites as support the introductory portion of Section 2.1(r) to the effect that the amount of Primary Social Security is frozen at the level of "the first to occur of his retirement, disability, termination, or 62nd birthday." (Doc. # 25 at 37; Doc. # 43 at 14). Plaintiff also relies on that portion of the Summary Plan Description which provides that, in the event of total disability prior to retirement, "the amount estimated you could receive at age 62 under the social security act in effect on January 1 of the year you became disabled" is the amount at

which his offset is to be frozen. (Doc. # 26, Exh. C at 15).

Extending his premise that the Social Security retirement benefit projected as of January 1, 1980, the January 1 next preceding his disability, constitutes his early retirement offset, Plaintiff further contends that the monthly amount due his eligible surviving spouse should also be determined using the amount of his Social Security retirement benefit "frozen" as of January 1, 1980. The plan language applicable to the surviving spouse's benefit is contained in Section 4.6(b)(2):

> The monthly amount of the surviving Spouse's benefit payable to a Spouse eligible therefor pursuant to subsection 4.6(a) above if the Member dies before the first to occur of his retirement or his Normal Retirement Age, but after the effective date of the election, shall be equal to 50% of the reduced amount of the monthly retirement benefit the deceased Member would have been entitled to receive beginning as of his early retirement if he had retired under subsection 4.2 hereof on the date immediately preceding the day on which he died (with the automatic election under subsection 4.7 hereof in effect). . . .

(Doc. # 26, Exh. H at 28).

Again, the plan does not expressly cover the question in this case, namely, the monthly benefit due the surviving spouse of a disabled employee or an early retired and disabled employee.[9]

D.P. & L., on the other hand, contends that in the event of either a disabled employee's early retirement or death before the disabled employee attains age 62, the Primary Social Security amount should be the Social Security payments due the employee on January 1 of the year the employee retires or dies. (Doc. # 36, at 22). D.P. & L. bases its contention on the language of Section 2.1(r)(3), arguing that the provision freezing the offset as of January 1st of the year in which the employee becomes disabled does not apply when a severance from service has occurred. Since retirement or death constitutes a severance from Service according to Section 2.2,[10] D.P. & L. argues that Plaintiff's Primary Social Security should be frozen at either the early retirement date or the constructive early retirement date, namely the day before the employee's death as provided in the spousal benefit provision of the Plan, Section 4.6(b)(2). In other words, upon a severance from service, the "freeze" on the Primary Social Security offset "thaws." Under D.P. & L.'s logic, it is replaced with an offset based on the early retirement date, Section 2.2(c)(2) or the constructive early retirement date, Section 4.6(b)(2), *supra.*

As further support for its position, D.P. & L. also cites the following provisions of the Summary Plan Description:

> If you retire early, your benefit is figured in the same way as for normal retirement. It will be based on your final average monthly pay and the social security act in effect on the January 1 of the year you retire or reach age 62, whichever is earlier.

(Doc. # 26, Exh. C at 13).

> However, if you die before retirement, your spouse will receive a monthly benefit equal to 50% of the reduced amount

---

**9.** The parties agree that for the normal retirement, on or after the 62nd birthday of a disabled employee, the Primary Social Security offset is frozen at the date of disability, here January 1, 1980. (Doc. # 25 at 38; Doc. # 36 at 20).

**10.** Section 2.2(c) of Retirement Income Plan Two provides:

> (c) *"Severance From Service"* means under uniform rules adopted by the Plan Administrator from time to time the earlier of (1) or (2) below:

> (1) The date the Employee quits, retires, is discharged or dies.
> (2) The first anniversary of the date the Employee is first absent for any other reason (except as otherwise provided by subsection 2.2(a)(5) above).

Under Section 2.2(a)(5)(B), an employee's long-term disability, qualifying him or her for benefits under the LTD plan, does not constitute a severance from service.

you would have received for an early retirement on the day before you died. (Doc. # 26, Exh. C at 16).

Despite this Court's conclusion that either interpretation is plausible and its sympathies for a disabled employee who reasonably interpreted his retirement plan, we are constrained by the standard of judicial review for interpretations of plan provisions by those the plan charges with this responsibility. In the D.P. & L. plan, Section 6.8 provides that the plan administrator, a fiduciary under the plan (Section 6.2), "shall have the right, subject to the approval of the Retirement Board, to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, within limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision" (Doc. # 26, Exh. H at 44).

■ The standard of judicial review of an exercise of the authority to interpret ambiguities or omissions which result in a denial of benefits, albeit a partial denial on the facts of this case, is well settled. The Court only determines whether or not the denial was arbitrary, capricious, or in bad faith. *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586, 587 (6th Cir.1982). *Cf. Rhoton v. Central States Southeast and Southwest Areas Pension Funds,* 717 F.2d 988, 989 (6th Cir.1983) (arbitrary and capricious standard articulated by Court, but administrator's interpretation of plan rejected since interpretation defied common sense and offended fairness). For a list of

Circuits which have adopted this standard, *see Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 393 (7th Cir.1983). *See also Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 823–24 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).[11]

■ Since the plan administrator in this case interpreted the plan provisions and omissions in a rational, logical manner, this Court cannot find, as Plaintiffs would have it, that Social Security offsets as calculated in 1980, the year in which William Lee's disability status commenced, are the appropriate offsets in computing William Lee's early retirement benefit or the survivor's benefit of his spouse, R. Bernadette Lee. Rather, the Court must enter the declaration sought by Defendant D.P. & L., namely, that if William Lee should take early retirement or die before age 62, his Social Security offset will be based on the offset rates in effect on January 1 in the year of his early retirement or death.

## V.  PLAINTIFF'S REQUEST FOR ADMINISTRATION MANUAL

D.P. & L.'s position is that James Mauch's initial decision not to send Plaintiff the manual was taken in good faith, that the Social Security offset charts were sent to Plaintiff William Lee on April 1, 1981, and that, even if they were not, Plaintiff was not harmed by his failure to receive them. (Doc. # 36 at 28 and Mauch Affidavit at ¶ 18). Under 29 U.S.C.A. § 1024(b)(4), a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest

---

**11.** This Court realizes that the limited security of this standard discourages challenges to a denial of benefits, thereby, as a practical matter, preventing a further escalation in the number of complaints filed in federal courts. However, the Court questions whether those circuits which have adopted this standard of review have carefully considered its continued use. The District of Columbia Circuit developed the standard in a series of cases which evaluated individual's claims to benefits under pension trusts administered by the United Mine Workers in the early 1960's. Given the Congressional findings of inadequacy in the administration and understanding by participants of plans in the pre-ERISA era, H.Rep. No. 533, 93d Cong. Cong., 2d Sess. 7–8, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4645–46, this Court must question the wisdom of the continued use of the arbitrary and capricious standard to review interpretations of pension plans qualified under ERISA when the statute expressly indicates a Congressional intent to provide safeguards in the administration of plans, standards of conduct for fiduciaries (including plan administrators), and ready access to federal courts. 29 U.S.C.A. § 1001(a) and (b) (1975 and Supp.)

updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated.*" (emphasis added). Redress for plan participants is provided in 29 U.S.C. § 1132(c), which states:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

■ Even if Mauch sent Plaintiff copies of the offset charts on April 1, 1981, more than thirty days after Plaintiff's February 2, 1981 request, the Court believes Defendants to have been in technical violation of 29 U.S.C.A. § 1024(b)(4). The sparse legislative history of this section reveals Congressional interest in making underlying plan documents available to participants to further their understanding of their ERISA-covered plans and to aid in their policing of such plans. S.Rep. No. 127, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4838, 4847, 4863–64. Given this legislative history and the plain language of the statute, an administration manual containing charts essential to the calculation of retirement benefits appears to this Court to constitute an "instrument[s] under which the plan is established or operated."

As good faith is not a defense to a breach of fiduciary duty, Mauch's good faith belief that he was not statutorily required to furnish Plaintiff William Lee with a copy of the manual does not work to insulate D.P. & L. from liability. *LeFebre v. Westinghouse Elec. Corp.,* 549 F.Supp. 1021, 1027–28 (D.Md.1982). The fact that Mauch limited his refusal to the manual, however, an item not specifically enumerated in Section 1024(b)(4), while still sending Plaintiff other requested documents, weighs against a discretionary award of damages under Section 1132(c). *See Wesley v. Monsanto Co.,* 554 F.Supp. 93, 98 (E.D.Mo.1982), *aff'd,* 710 F.2d 490 (8th Cir. 1983). Most courts interpreting Section 1132(c) have denied damages in the absence of a showing by Plaintiff that his rights under ERISA were prejudiced by a failure to furnish him with certain required plan documents. *Adams v. Western Conference of Teamsters Pension Plan,* 484 F.Supp. 933, 935 (D.Utah 1979), *Pollock v. Castrovinci,* 476 F.Supp. 606, 618 (S.D.N. Y.1979), *aff'd,* 622 F.2d 575 (2d Cir.1980).

■ Plaintiff contends that his retirement planning was hampered by his delay in obtaining the offset charts contained in the manual. Inconvenience of this nature, however, doubtless accompanies any delay in obtaining requested materials under Section 1024(b)(4). Plaintiff has not in fact retired from D.P. & L. and specifically states that he has no plans for early retirement. (Lee Affidavit, Doc. # 26, at ¶ 33). There does not appear to be a prejudice to Plaintiff's rights under ERISA warranting a discretionary award of damages under 29 U.S.C.A. § 1132(c) due to the isolated, albeit improper, failure of Mauch to furnish Plaintiff with the requested manual. Accordingly, Count III of Plaintiffs' Motion for Summary Judgment is overruled, and Count III of D.P. & L.'s Motion for Summary Judgment is sustained.[12]

---

12. The Court notes that James H. Yates, while presumably still a Defendant in this case, is not a party to any of the summary judgment motions under consideration by this Court. Accordingly, Defendant Yates is directed, within thirty days of receipt of this opinion, to file his own motion for summary judgment with respect to those Counts of Plaintiffs' Amended Complaint which name him as a party Defendant.

## VI. ATTORNEYS' FEES

Finally, Plaintiffs have included in their Motion for Summary Judgment a claim for costs and attorneys' fees under 29 U.S.C. § 1132(g)(1) in an amount to be determined by this Court. (Doc. # 25 at 2, 50). Plaintiffs have made no attempt, however, to address 29 U.S.C. § 1132(g) and to justify their entitlement to costs and fees under said statute. Defendants Unionmutual and D.P. & L. argue that the Court should reserve ruling on Plaintiffs' request until the issue is appropriately briefed by both sides. (Doc. # 34 at 20; Doc. # 36 at 30).

In light of the decision of the United States Supreme Court in *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Sixth Circuit has ruled that the pendency of an application for attorneys' fees does not affect the finality of a decision on the merits and is not governed by the time restrictions of Fed.R.Civ.P. 59(e). *Smillie v. Park Chemical Co.*, 710 F.2d 271, 274 (6th Cir.1983); *Merkel v. Scovill, Inc.*, 573 F.Supp. 1055, 1057 (S.D.Ohio 1983).

Accordingly, Plaintiffs will have thirty (30) days from their receipt of this decision to file, if they so choose, a memorandum in support of their request for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). Defendants will have twenty (20) days from the date of service to file any memorandum in opposition, and Plaintiffs will have seven (7) days to file any reply memorandum.

## VII. SUMMARY

(1) Count I of Plaintiffs' Motion for Summary Judgment is sustained with respect to the offset of William Lee's daughters' social security benefits from his LTD claim, and the relevant portions of Count I of Defendants' Motions for Summary Judgment are overruled. Defendants are ordered to compensate Plaintiff William Lee for the amounts deducted from his LTD benefits as of September 16, 1980, and to make no such offset in the payment of his LTD benefits henceforth.

(2) Count I of Plaintiffs' Motion for Summary Judgment is overruled with respect to the amount of the offset from William Lee's LTD benefit due to his receipt of Social Security benefits. The amount of offset is deemed to be "frozen" at $577.50. The Court thus sustains this portion of Count I of Defendants' Motions for Summary Judgment.

(3) Count II of Plaintiffs' Motion for Summary Judgment, seeking declaratory relief, is overruled. In the event of William Lee's early retirement or death prior to retirement, the tables of Social Security offsets to be used for purposes of William Lee's own benefits or the surviving spouse's benefits of R. Bernadette Lee are those tables of Social Security benefits corresponding to the calendar year in which Plaintiff's early retirement or death occurs. Defendant D.P. & L.'s request for declaratory relief is therefore granted.

(4) Count III of Plaintiffs' Motion for Summary Judgment, regarding damages pursuant to 29 U.S.C. § 1132(c), is overruled, and Count III of Defendant D.P. & L.'s Motion for Summary Judgment is sustained.

(5) The Court does not rule at this time on Count IV of Plaintiffs' Motion for Summary Judgment for costs and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).